## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:17-CV-14177-ROSENBERG/LYNCH

MONICA STONE, *as the*
*Personal Representative of the*
ESTATE OF CHRISTOPHER COX,

      Plaintiff,

v.

ROBERT HENDRY, ROBERT FEIPEL,
CHRISTOPHER ROSE, CHARLES MARTEEN,
DAVID BAILES, and CAROLYN CONRAD,

      Defendants,

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' CHRISTOPHER ROSE AND DAVID BAILES MOTION TO DISMISS THE AMENDED COMPLAINT

Plaintiff, MONICA STONE, as the Personal Representative of the ESTATE OF

CHRISTOPHER COX, by and through the undersigned legal counsel, hereby files this Response

in Opposition to Defendants', CHRISTOPHER ROSE and DAVID BAILES (hereinafter "ROSE

and BAILES"), Motion to Dismiss the Amended Complaint and states the following in support

hereof:

### *Background*

This is a claim for damages by the Estate of Christopher Cox under Title 42 s. 1983 for a

violation of his Constitutional rights under the 8th Amendment to the U.S. Constitution.  Mr. Cox

was murdered by his cellmate while in the custody and care of the Martin County Correctional

Institute (MCI).  Both Mr. Cox and his cellmate, Hurley Brown, were designated to be kept

separate from other inmates by MCI.  MCI and the individual defendants ignored their own

designation and housed the two inmates together and actually locked them down within a cell alone.  Within the first day of putting them together, Brown slowly beat Cox to death while no one came to his aide.  After he laid unconscious on the floor of his cell with other inmates screaming for help for approximately 30 minutes, Defendants Conrad and Bailes arrived and failed or refused to render aide when it was obvious and apparent Cox was in distress.  Cox's estate alleges that MCI and the individual defendants violated his 8th Amendment rights in two ways; 1) they failed to protect him from a known obvious and dangerous harm posed by locking him down in a cell with a larger, stronger, violent inmate undergoing psychological problems they designated to keep separate; and 2) they failed to timely render aide when it was obvious and apparent Cox was in distress and required medical assistance.

In all civil rights claims under s. 1983, law enforcement defendants **always try to claim** allegations are not specific enough for them to assert their rights under qualified immunity.  They further **always try to claim** that they didn't know they had the duty to protect the Plaintiff from a violation of this particular constitutional right.  Therefore, the Plaintiff must show them a case which would have put them on notice that locking down a bigger, stronger, violent inmate, whom they designated to keep alone, with a smaller, weaker inmate, also designated to be kept alone, might violate the smaller, weaker inmates rights when the bigger, stronger, violent inmate beats him to death while they are locked down and left unchecked.   Also they claim they need a case to put them on notice that when they are alerted to an inmate on inmate attack they should have known was going to happen, they need to come to the aide of the smaller weaker inmate they locked down with the bigger, stronger, violent inmate complaining of mental health problems.  Finally, the Defendants claim they also need a case to tell them that after the smaller weaker inmate is unconscious, has obvious signs of serious injuries, with the entire cellblock

screaming for help for 30 minutes, that they are required to render medical assistance to the injured inmate who was literally dying from the beating at the hands of the bigger, stronger more violent inmate.  Defendants ROSE and BAILES move to Dismiss the Amended Complaint for these same reasons always asserted by law enforcement in these cases.

### Argument and Memorandum of Law

Defendants ROSE and BAILES requests for dismissal should be denied.  Moreover, the Amended Complaint states a claim against them upon which relief may be granted. Qualified immunity protects government officers performing discretionary functions from suit so long as their conduct does not violate a Plaintiff's clearly established constitutional rights. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Three sources of law put a government official "on notice of... constitutional rights: specific... constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1330 (11th Cir. 2007) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1351-52 (11th Cir. 2002)).

In this case, the law has long been clearly established. The Eighth Amendment to the Federal Constitution specifically provides inmates with a right not to be subjected to "cruel and unusual punishment." Moreover, in 1994, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the U.S. Supreme Court recognized the right of an inmate to be free from violence at the hands of other inmates.

Furthermore, in 2006, the 11th Circuit held that a supervisor may be held liable under Section 1983 when he participates in the alleged constitutional violation or when there is a causal connection between his actions and the violation. See *Valdes v. Crosby*, 450 F.3d 1231, 1236 (11th Cir. 2006). The Court explained that a causal connection supporting supervisory liability under Section 1983 exists "when: 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." Id. at 1237 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).

If the Court starts by looking at the Amended Complaint, it is clear that this is a detailed, factual Complaint.  The Plaintiff is deceased and unfortunately was never able to tell his side of the story.  The facts have to be taken from the investigation conducted by law enforcement. Needless to say, the pleading presumptions in favor of the Plaintiff are particularly important in cases like this where much detail will have to be developed through the discovery process. While these claims are challenging to plead, the Amended Complaint is over 140 paragraphs and does contain great detail.

Defendants ROSE and BAILES raise numerous issues related to the allegations in the Amended Complaint.  They are broken down into two sections in their Motion to Dismiss. Plaintiff will respond in the order Defendants presented the arguments in their Motion to Dismiss.

First the Defendants argue under the "Standard of Review" section, that the Amended Complaint fails to give the Defendants fair notice of what Plaintiff's claims are and the grounds

upon which they rest.  (Subsection A page 4 of Defendants Motion to Dismiss).  Second, Defendants argue they are entitled to qualified immunity (Subsection B, p.5) based upon Plaintiffs failure to allege deliberate indifference (Subsection I, p. 7) and Plaintiff fail to state a failure to render aide claim (Subsection ii, p. 9).

### *Pleading Standard (Defendants "A. Standard of Review")*

The individual Defendants argue that Plaintiff has failed to state a claim upon which relief might be granted.  Fed.R.Civ.P. 12(b)(6).  This extraordinary remedy is "viewed with disfavor and rarely granted."  Wright & Miller, Fed. Pract. & Proc. Civil 2d § 1357 (1990).  The Court's analysis is bound by the four corners of the complaint, Wilson v. Edenfield, 968 F. Supp 682-83 (M.D. Fla. 1997), Plaintiff's allegations are accepted as true, Id. at 683, and relief should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Bank v. Pitt, 928 F.2d 1108, 1111-12 (11th Cir. 1992).

The standard is not whether Plaintiff's argument will prevail, but whether the allegations warrant discovery.  Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d  1577, 1579 (11th Cir. 1986).  The Eleventh Circuit has held that although there may be doubts as to "all of the circumstances" surrounding a given party's involvement in a § 1983 action, a plaintiff's "boilerplate" and "vague" allegations warrant further proceedings to develop the record.  Ortega v. Christian, 85 F.3d 1521, 1527 (11th Cir. 1996)(citing Sivard v. Pulaski County, 959 F. 2d 662, 668-69 (7th Cir. 1992)).  In sum, "[T]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low."  Wilson, 968 F. Supp. At 683.

In its "Standard of Review" section these Defendants argue that the allegations in the Amended Complaint do not rise to a level beyond mere speculation.  The Amended Complaint

alleges, without any speculation that: 1) Inmates Brown and Cox were not supposed to be locked in the same cell together and that was known by these Defendants (AC[1] 25-26); 2) Brown is substantially bigger and stronger than Cox (AC 29-30); 3) Brown expressed concern about his mental health condition (AC 31); 4) Cox was in fear for his life and advised he was in danger (AC 27); 5) All events transpired in the D wing of MCI (AC 24); 6) ROSE and BAILES were working the D wing at MCI (AC 63); 7) Other inmates warned not to put Brown and Cox in the same cell (AC 52); 8) When the attack began, other inmates screamed and yelled for help for 30 minutes before anyone arrived (AC 55-56); 9) Upon arrival, Cox had been beaten by Brown and was unconscious on the ground with obvious injuries (AC 57); 10) No emergency care was provided at that time (AC 59); 11) Florida corrections officers are responsible for the supervision, care, custody and control of all inmates in Florida.  (AC 61); Correction officer duties include supervising inmates in housing units and segregating those for administrative or punitive measures, maintaining periodic patrol, maintaining control and discipline, and carrying out inmate designations to prevent placing inmates in obvious dangers. (AC 62); 12) Correction Officers ROSE and BAILES were assigned to D wing on March 15, 2015 at MCI  (AC 63); 13) ROSE and BAILES knew inmates were classified based upon danger to others, among other things (AC 64); 14) They further knew that once classified as a "PM" they had to take precautions to protect other inmates from dangers presented by the inmate with such designation (AC 64); 15) ROSE and BAILES should have used common sense in locking inmates Cox and Brown in the same cell knowing Brown's propensities, the difference in size and strength between Cox and Brown and Brown's mental health state.  They further were aware that Cox and Brown were of different races (AC 66); 16) Failing to respect and follow the designations given to Brown, or failing to designate him properly, was deliberately

---

[1] AC followed by a number is Amended Complaint and paragraph number.

indifferent to the health and safety of Cox and resulted in his needless beating, strangulation and death at the hands of Brown (AC 67);  17)  ROSE and BAILES approved and/or permitted Brown and Cox to be placed in, or remain in, the same cell (AC 71);  18)  ROSE and BAILES were not permitted to be deliberately indifferent to Cox's safety by arbitrarily assigning or leaving Cox in a cell with Brown (AC 72);  19)  ROSE and BAILES were required to use common sense and consider the inmates age, size, strength, disciplinary history, criminal history, known biases or conflicts, propensity for violence, and mental health condition before placing inmates in a cell together (AC 74);  20)  As a level 6 facility, ROSE and BAILES were on notice they were dealing with dangerous inmates that threaten others (AC 75);  21)  Despite knowing of the obvious danger, ROSE and BAILES failed or refused to protect Cox from the obvious danger (AC 76);  22)  It was deliberately indifferent to place Cox in cell DD2210 all alone with Brown (AC 77);  23)  ROSE and BAILES, along with others, could have kept Cox and Brown separated but chose not to do so (AC 78);  24)  Prior to the murder Brown told MCI he was not right and needed help (AC 83);  25)  Brown indicated before the murder that he intended to rape Cox (AC 85);  26)  Cox had complained to MCI that he was in danger and feared for his life (AC 86);  27) At the beginning of the long beating of Cox, inmates began screaming and banging on their doors to get the attention of the guards to come to Cox's rescue.  It took 30 minutes of screaming and banging before anyone reported to DD2210 only to find Cox unconscious (AC 87);  28) Inmates testified under oath that they specifically told correction officers at MCI not to put Cox in the cell with Brown (AC 91).

Defendants ROSE and BAILES argue that the Complaint does not rise above the "speculative level" despite the detailed rendition of facts alleged above.  Under these circumstances, the facts alleged in the Amended Complaint are extremely detailed.  Plaintiff has

alleged these Defendants were working on the Wing, knew of PM designation for both Cox and Brown and still intentionally locked them down in a cell together.  They knew of the obvious difference in size and race, and knew Brown was suffering from mental health problems.  Brown cautioned them himself, Cox told them he feared for his life, and other inmates told them not to put Cox in a cell with Brown.  Even after they didn't listen and locked them down together, the inmates screamed and banged on the cell doors for 30 minutes before anyone came to Cox's aide.  When they arrived they still did not provide emergency medical treatment despite the obvious distress Cox was in.  ROSE and BAILES were working in the D Wing at the time of the attack and warnings leading up to the attack.   ROSE and Conrad were the first to get to the cell. BAILES came shortly after.  They were responsible for the D wing and in physical proximity of the attack.

### *Qualified Immunity*

The Defendants correctly cite the standard for qualified immunity.  They do not argue that ROSE and BAILES were not acting within their discretionary authority so this issue appears undisputed.  However, the Defendants do try to claim that Plaintiff has not met his burden to show the officials alleged conduct violated a constitutionally protected right, and that the right was clearly established at the time of the alleged misconduct.  The Defendants are wrong.

Plaintiff has alleged a violation of the 8th Amendment right to be free from infliction of "cruel and unusual punishment".  The Amended Complaint actually references the Supreme Court case of *Farmer v. Brennan*, 511 U.S. 825 (1994) which established the current legal standard for civil rights liability against correctional officials and employees in the context of failure to prevent prisoner on prisoner assault.  *Farmer* makes it clear that "deliberate indifference" is based on subjective awareness, i.e. that the prison official knows that an inmate

or inmates face a substantial risk of serious harm, and disregards that risk, by failing to take reasonable measures to abate it, or prevent it.  In this case, ROSE and BAILES were on the D wing and supervising the inmates.  They knew Brown and Cox were both designated as PM, which stands for protective management.  They were not supposed to be housed with other inmates.  The Amended Complaint alleges in great detail all of the facts known by MCI which certainly should have been known by the correctional officers working the floor at that time.

A second part of this claim, which applies even if you ignore all of the designations and warnings that put ROSE and BAILES on notice of the substantial risk, is that once the attack began, inmates screamed and banged their cells for 30 minutes before someone finally came to open the cell where Brown was beating Cox to death.  These two Defendants are alleged to be there and responsible for the D Wing while this attack was taking place.  Both putting these inmates  together when they knew it created a substantial risk for Cox, and failing to come to aide after being alerted to an attack actually taking place, are both violations of the 8th Amendment and are objectively and subjectively deliberately indifferent to Cox's 8th Amendment right.

Failing to render aide after Cox was lying on the ground unconscious represents a third separate violation of the 8th Amendment by ROSE and BAILES as well as the other individual defendant that failed to act.  These Defendants work in a level 6 facility.  Brown was designed to be kept separate.  It is alleged Brown warned them not to put him together with Cox, Cox warned them not to lock him up with Brown.  Other inmates warned them not to house them together.  Brown is more dangerous and obviously bigger, stronger and more violent than Cox.  Cox weighed **123 pounds** and was also designated PM.  Locking them down together was deliberately indifferent to a known substantial risk, failing to monitor them was deliberately

indifferent, failing to come to Cox's aide after being alerted to the attack was deliberately indifferent and failing to render emergency medical care was deliberately indifferent. It is alleged that other inmates knew and told MCI not to put Cox with Brown. If the other inmates knew, how could the individuals responsible for the safety of the inmates not know without deliberate indifference. The physical size and strength differences were readily obvious. The Amended Complaint alleges a substantial risk of serious harm known to these Defendants. The Defendants deliberate indifference to the risk of substantial harm caused the serious injury and death of Cox. (See Amended Complaint Paragraphs 98-105). ROSE and BAILES claims that Plaintiff failed to allege any risk is belied by countless paragraphs of the Amended Complaint. To the extent the Defendants missed all of the detailed facts set out earlier, Plaintiff actually says, "Defendants had actual knowledge of, appreciated and ignored the risks and dangers to Cox's health and safety. Having an appreciable opportunity to do so, the Defendants took no action to abate the risk and danger to Cox's health and safety. Each Defendant observed Cox and Brown in a cell together, appreciated the danger Cox was in, but failed to separate Cox and Brown." (See paragraphs 100-102. Numbering omitted from quotes).

Once again, even if all of the obvious allegations of dangers Cox was facing are ignored, the claims are still sufficiently alleged on the allegations of the failure to come to his aide after being alerted to the attack by inmates screaming for help and pounding on their cell doors for 30 minutes. These two Defendants were on the floor in the D Wing while this was happening. Defendant ROSE was the first to belatedly arrive at the cell to ignore Cox's obvious injuries need for medical care.

### *Failure to Render Aide Claim*

ROSE and BAILES try to claim that Plaintiff has failed to allege a failure to render aide case because they did not allege the four requirements set out in case law for a failure to render aide 8th amendment claim. Again, the Defendants ignore a mountain of factual allegations that more than support the claims in this case. Defendants appear to argue Plaintiff did not have (1) an objectively serious need. The allegations are that the Plaintiff was slowly beaten to death by another inmate who was bigger, stronger and more violent with whom he was locked down. Despite yelling and screaming by other inmates for 30 minutes that Cox was being attacked, when someone finally arrived, Cox was unconscious with obvious injuries. ROSE and Conrad still failed to provide medical attention or summon help. It was not until another 20 minutes expired that other nurses showed up and began CPR. At that point, it was too late. One cannot allege a more serious objective need for aide than lying unconscious with obvious injuries after a long beating by a bigger stronger more violent inmate while trapped alone in a cell with him. Subjectively, these Defendants observed him lying unconscious and chose to refuse to render aide. The response was (2) objectively insufficient. Cox died from the beating at the hands of Brown. The response should have been at a minimum stopping the savage beating before Cox suffered fatal injuries. The next level should have been immediate emergency medical attention. Both responses were objectively and subjectively insufficient. All of this should have been prevented by recognizing the obvious need to keep them separate in the first place. The (3) subjective awareness of the facts signaling the need is again easily inferred from the proximity of these correctional officers on the D Wing and their responsibility to the inmates housed there. While they subjectively should have been aware of the obvious dangers, even if they somehow missed them, they were alerted to the attack immediately by other inmates and failed or refused

to respond.  When they did respond they did not provide emergency medical care.  An (4)[2] actual inference of required action from those facts is obvious.  The size and strength differences between Cox and Brown, the keep separate orders, the warnings from Cox, Brown and other inmates all signal required action.  However, once the attack began, screaming and banging required immediate action to protect Cox in a locked down cell with a bigger, stronger more violent inmate complaining of mental health problems.   Finally, observing Cox unconscious on the ground with serious injuries called for emergency aide.  ROSE and BAILES personally observed Cox lying unconscious with his pants pulled down bleeding from the ears.

*Conclusion*

The Amended Complaint sufficiently alleges claims against Defendants ROSE and BAILES.  This is a detailed Amended Complaint.  These claims are admittedly difficult to plead.  Any pleading deficiencies can certainly be corrected if the Court deems insufficient.  Plaintiff would respectfully ask to be afforded an opportunity to correct anything the Court may believe is insufficient or improperly plead.

The U.S. Supreme Court case of *Farmer v. Brennan,* actually cited in the Amended Complaint, as well as all the cases cited therein, puts the Defendants on notice sufficient to defeat claims of qualified immunity.  Plaintiffs have alleged subjective and objective knowledge of the obvious substantial risks to Mr. Cox that actually came true.

WHEREFORE the Plaintiffs, prays this Honorable Court will DENY these Defendants Motion To Dismiss the Amended Complaint.

---

[2] The numbers (1)-(4) correspond to the arguments in Defendants Motion to Dismiss on p. 9 of that Motion.

## <u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that on June 21, 2017, the above document was electronically filed with the Clerk of Court by using the Court's Electronic Case Filing System, and relied upon the system's automatic service of this document to all counsel of record.


                        /s/ James A. Wardell
                        JAMES A. WARDELL, ESQUIRE
                        Florida Bar No.:  0868061
                        WARDELL LAW FIRM, P.A.
                        805 W. Azeele Street
                        Tampa, FL  33606
                        Telephone:  (813) 387-3333
                        Facsimile:  (813) 387-3050
                        jwardell@jawlaw.net
                        kdaley@jawlaw.net
                        Attorney for Plaintiff