**33-602.220 Administrative Confinement.**

(1) Definitions.

(a) Administrative Confinement – the temporary removal of an inmate from the general inmate population in order to provide for security and safety until such time as more permanent inmate management processes can be concluded.

(b) Bureau of Braille and Talking Book Library – refers to the agency that provides books on tape, Braille books, and other auxiliary aids for individuals who, due to a disability are unable to read books in print.

(c) Central Office ADA Coordinator – refers to the employee responsible for implementing the provisions of Title I and Title II of the Americans with Disabilities Act and Section 504 of the 1973 Rehabilitation Act within the Department.

(d) Housing supervisor – the correctional officer sergeant, or above, who is in charge of the administrative confinement unit for a particular shift.

(e) Review – where used herein, refers to the evaluation of pertinent information or documentation concerning an inmate's confinement status to determine if changes or modifications are required or recommended.

(f) Visit – where used herein, refers to the official inspection and tour of a confinement unit by a staff member.

(g) Clinical health care personnel – where used herein, refers to a physician, clinical associate, nurse, Correctional Medical Technician Certified (CMTC), psychologist, psychology intern, psychology resident, or psychological specialist.

(h) Institutional Classification Team (ICT) – refers to the team consisting of the Warden or Assistant Warden, Classification Supervisor, a correctional officer chief, and other members as necessary when appointed by the warden or designated by rule. The ICT is responsible for making work, program, housing and inmate status decisions at a facility and for making other recommendations to the State Classification Office (SCO).

(i) State Classification Office (SCO) – refers to a staff member at the Central Office level who is responsible for the review of inmate classification decisions. Duties include approving or rejecting ICT recommendations.

(j) Security pen – refers to a specially designed flexible ink pen that bends under pressure and has a tip that retracts under excessive pressure.

(k) Senior correctional officer – refers to a staff member with the rank of correctional officer lieutenant or above.

(l) Special risk inmate – any inmate who has demonstrated behavior that is or could be harmful to him or herself.

(m) Institutional Classification Team Docket – refers to the official record of an Institutional Classification Team hearing.

(n) Offender Based Information System (OBIS) – refers to an electronic data system used by the Department of Corrections to record and retrieve offender information.

(o) Major rule violation – means any assault, battery or attempted assault or battery; any spoken or written threat towards any person; inciting or attempting to incite or participating in any riot, strike, mutinous act or disturbance; fighting; possession of weapons, ammunition, explosives or escape paraphernalia; and any escape or escape attempt.

(2) Procedures for Placement in Administrative Confinement.

(a) Administrative confinement is a temporary confinement status that may limit conditions and privileges as provided in subsection (5) as a means of promoting the security, order and effective management of the institution. Otherwise the treatment of inmates in administrative confinement shall be as near to that of the general population as assignment to administrative confinement shall permit. Any deviations shall be fully documented as set forth in the provisions of this rule.

(b) When a decision is made to place an inmate in administrative confinement, the reason for such placement shall be explained to the inmate and the inmate shall be given an opportunity to present verbal comments on the matter. The inmate shall also be allowed to submit a written statement. Prior to placing the inmate in administrative confinement, the inmate shall be given a pre-confinement health assessment to include a physical and mental health evaluation that shall be documented in the health care record. Inmates shall be weighed upon admission to administrative confinement, at least once a week while in administrative confinement, and upon leaving administrative confinement. The weight of the inmate shall be recorded on Form DC6-229, Daily Record of Special Housing. Form DC6-229 is incorporated by reference in Rule 33-601.800, F.A.C. When an official places an inmate in administrative

confinement, this action shall be documented in the electronic classification contact log in OBIS. This entry shall fully state the circumstances surrounding and reasons for placing the inmate in administrative confinement and a summary of the inmate's comments. The reason must correspond with one of the criteria for placement provided in subsection (3) of this rule. This electronic entry shall be completed the same day the inmate is placed into confinement, and will establish the ICT 72-hour review appointment. Any written statements provided by the inmate shall be forwarded to the ICT for their consideration during the forthcoming 72-hour review.

(c) The Institutional Classification Team shall review inmates in administrative confinement within 72 hours. The ICT's findings and decision shall be documented in the electronic classification contact log in OBIS. The only exception to being reviewed within 72 hours is when the ICT cannot complete its review within the allotted timeframe due to a holiday. If the review cannot be completed within 72 hours, the action of the senior correctional officer shall be reviewed within 72 hours by the duty warden, documented on the Form DC6-229, Daily Record of Special Housing, and evaluated within 5 days by the ICT. Inmates placed into administrative confinement shall not be released from this status until approved by the ICT. The classification supervisor shall be responsible for ensuring that the ICT docket is prepared. The ICT Chairperson is responsible for scheduling the ICT hearing date and time. The ICT shall review inmates for release. During this review the ICT shall consider pending disciplinary hearings and other pending issues or actions. If an inmate has been held in administrative confinement pending a disciplinary hearing and the decision is not to impose disciplinary confinement as a part of the disciplinary action, the disciplinary team or hearing officer shall notify the confinement supervisor who shall coordinate the release of the inmate from administrative confinement. If the confinement supervisor discovers other pending issues or actions, the ICT shall be required to immediately review the case. In the event it is necessary to release an inmate from administrative confinement during weekends or holidays the duty warden is authorized to approve the release immediately.

(3) Reasons for Placement in Administrative Confinement with time limits. Placement of an inmate in administrative confinement is authorized for the following reasons:

(a) Disciplinary charges are pending and the inmate needs to be temporarily removed from the general inmate population in order to provide for security or safety until such time as the disciplinary hearing is held. A senior correctional officer or above shall have the authority to place an inmate in administrative confinement for this reason. The length of time spent in administrative confinement for this reason shall not exceed seven working days unless the ICT authorizes an extension of 5 working days. This extension shall be documented on Form DC6-229, Daily Record of Special Housing.

(b) Outside charges are pending against the inmate and the presence of the inmate in the general population would present a danger to the security or order of the institution. A senior correctional officer or above shall have the authority to place an inmate in administrative confinement for this reason. The length of time spent in administrative confinement for this reason shall not exceed 15 working days. The ICT shall be authorized to grant an extension of 5 working days. If it appears that an inmate should continue to be segregated from the general population beyond 20 working days, close management procedures shall be initiated pursuant to Rule 33-601.800, F.A.C.

(c) Inmates shall be placed in administrative confinement pending review of the inmate's request for protection from other inmates, (Rule 33-602.221, F.A.C.). The inmate shall be placed in administrative confinement by a senior correctional officer when the inmate presents a signed written statement alleging that the inmate fears for his safety from other inmates, and that the inmate feels there is no other reasonable alternative open to him. A senior correctional officer shall place an inmate in administrative confinement, pending review for protective management, based on evidence that such a review is necessary and the senior correctional officer determines that no other reasonable alternative is available. The inmate shall be encouraged to provide information and otherwise cooperate with the investigation of the matter. The protective management process, including the ICT's action, shall be completed within 15 working days from the initial confinement of the inmate.

1. The Institutional Classification Team (ICT) shall complete an OBIS electronic classification contact log entry approving the inmate's continuation in confinement. This entry will initiate an appointment for an investigation to be conducted. The investigator shall enter the results of the investigation in the electronic classification contact log in OBIS; this entry will automatically schedule an ICT review appointment.

2. If the inmate submits a request for release in writing at any time during the ICT review or investigation process,

the housing supervisor shall provide the inmate with a Form DC6-203, Protection Waiver/Appeal Decision. Form DC6-203 is hereby incorporated by reference. A copy of this form is available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01671. The effective date of the form is 1-19-03. The inmate shall complete Form DC6-203 and return it to the housing supervisor for submission to the ICT along with the inmate's written request.

　　　3. Once the investigation is complete, the ICT shall interview the inmate to determine whether the inmate has a legitimate, verifiable need for protection. The ICT shall review all documentation available concerning the need for protection to include any written statements submitted by the inmate. The inmate's written request for release and the DC6-203 will also be reviewed. The following elements shall be considered in determining whether protective management is necessary:

　　　　a. A record of having been assaulted;
　　　　b. A reputation among the inmate population, attested to in writing by staff, as an informant or trial witness;
　　　　c. Verified threats, verbal abuse, or harassment;
　　　　d. A former criminal justice activity resulting in verified threats, verbal abuse, or harassment;
　　　　e. A conviction of a crime repugnant to the inmate population;
　　　　f. Reliable, confirmed evidence of sexual harassment;
　　　　g. Other factors such as physical size, build and age producing a risk from the general inmate population.

　　　4. The ICT shall make recommendations concerning protective management based on the facts within 15 working days from the date of initial confinement. The ICT's findings and recommendations shall be entered in the electronic classification contact log in OBIS; this entry will automatically schedule an SCO review appointment. Whether the ICT recommends protective management or not, the inmate shall remain in administrative confinement at that facility pending review by the SCO. All non-electronic related documentation shall be made available to the SCO by the ICT. The State Classification Office shall approve, disapprove or return for additional information the recommendation of the Institutional Classification Team.

　　　5. The State Classification Office (SCO) shall determine within five working days whether protection is necessary based upon the investigation and any follow-up they deem appropriate. The SCO shall approve or disapprove placement of the inmate in protective management. The SCO's decision shall be documented in the electronic classification contact log in OBIS. If the SCO determines that a need for protection exists, they shall direct that the inmate shall be placed in a protective management unit or transferred to resolve the inmate's need for protection. If a decision is made to transfer the inmate for housing in a protective management unit or to resolve the inmate's need for protection at the inmate's current location, the inmate shall be kept in administrative confinement until the transfer is completed. Transfers for protection needs shall be effected within five working days. SCO members are authorized to approve transfers. If the SCO determines that protective management is not necessary, the inmate may appeal this decision directly to the Office of the Secretary pursuant to Rules 33-103.007 and 33-103.011, F.A.C. The inmate shall be notified of the SCO's decision by the ICT. At the time of notification, the inmate shall be asked if he wants to appeal the decision. The inmate's acknowledgement of being informed of the SCO denial and the inmate's decision on whether or not to appeal shall be documented on the electronically produced Notification of Protective Management Disapproval, Form DC6-137, and the electronic contact log. Form DC6-137 is hereby incorporated by reference. A copy is available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01673. The effective date on the form is 1-19-03. The inmate shall remain in administrative confinement until the appeal process is complete.

　　　6. Within three working days after an inmate has been either received at a protective management facility for the purpose of protective management or after an inmate already housed at a facility with a protective management unit has been approved for protective management by the SCO, a determination shall be made by the ICT as to appropriate housing. The ICT shall ensure that the housing supervisor assesses the inmate being placed into the protective management unit for his potential for risk to or from other inmates in the protective management unit. The inmate shall remain in administrative confinement until this assessment is made.

　　　(d) Inmates who present a signed written statement alleging that they are in fear of staff and provide specific information to support this claim shall also be placed in administrative confinement. These cases shall be reported via

e-mail to the Office of the Inspector General for review and possible investigation. After completion of the review and investigation, the inspector general shall submit the case to the ICT or SCO with recommendations for disposition. If the case is submitted to the ICT, the ICT shall docket the case for consideration no later than the next ICT meeting. If the case is submitted to the SCO, the SCO shall coordinate with the ICT regarding recommendations. The time frames listed in paragraph (e) below shall apply to inmates in administrative confinement due to alleged fear of staff.

(e) An investigation, evaluation for change of status or transfer is pending and the presence of the inmate in the general population might interfere with that investigation or present a danger to the inmate, other inmates, or to the security and order of the institution. An investigating officer shall have the authority to request that the senior correctional officer place the inmate in administrative confinement for this reason and the length of time spent in this status shall not exceed 15 working days unless one 5 working day extension is granted by the ICT. This extension shall be documented on the Daily Record of Special Housing, Form DC6-229. If it is necessary to continue the inmate's confinement beyond this first extension, written authorization must be obtained from the SCO for a 30 day extension. This authorization shall be attached to the Form DC6-229. The SCO shall have the authority to authorize one additional 30 day extension. Examples of circumstances for placing an inmate in administrative confinement for this reason include:

1. Pending an evaluation for placement in close management.

2. Special review against other inmates, disciplinary, program change or management transfer. Transfers for this reason shall be given priority.

3. Pending an investigation into allegations that the inmate is in fear of a staff member. The protection process outlined in paragraph (d) above shall be utilized for this purpose. Paragraph (c) above shall not apply.

4. Any other reason when the facts indicate that the inmate must be removed from the general inmate population for the safety of any inmate or group of inmates or for the security of the institution.

(f) When an inmate is received from another institution when classification staff is not available to review the inmate file and classify the inmate into general population, a senior correctional officer or above has the authority to place the inmate into administrative confinement. The length of time spent in administrative confinement for this reason shall not exceed two working days. If the initial review suggests that a further investigation is necessary prior to release, the inmate's status can be changed to pending investigation or other status.

(4) Administrative Confinement Facilities.

(a) The number of inmates housed in an administrative confinement cell shall not exceed the number of bunks in the cell. The only exception to this policy is during an emergency situation as declared by the warden or duty warden. The regional director of institutions and the emergency action center in central office shall be advised of the emergency. If the emergency situation exists in excess of 24 hours, the warden or duty warden must get specific written authorization from the regional director of institutions to continue to house inmates beyond the 24-hour period. Prior to placing inmates in the same cell, the inmates will be interviewed by the housing supervisor to ensure that none of the inmates constitute a threat to any of the others.

(b) All administrative confinement cells shall be equipped with toilet facilities and running water for drinking and other sanitary purposes. Water in the cell can be turned off when necessary due to misbehavior. In such event, the inmate occupant shall be furnished with an adequate supply of drinking water by other means to prevent dehydration. This action shall be documented on Form DC6-229, Daily Record of Special Housing.

(c) Prior to placement of an individual in an administrative confinement cell, it shall be thoroughly inspected to ensure that it is in proper order and the inmate housed in that cell shall then be held responsible for the condition of the cell. Form DC6-221, Cell Inspection, shall be used for this purpose. Form DC6-221 is incorporated by reference in Rule 33-601.800, F.A.C. Routine searches of each cell may be conducted at any time, but will be conducted, at a minimum, each time an inmate is removed from the cell for a shower. All searches shall be documented on Form DC6-229, Daily Record of Special Housing. All inmates will be searched prior to entering the confinement unit and upon departure. All items entering the confinement unit will be thoroughly searched, to include at a minimum, food cart and trays, laundry and linens and inmate property.

(d) The administrative confinement cells shall be physically separate from other confinement cells and the cell doors will feature remotely controlled locking devices, whenever possible given the physical design of the facility,

and the number of inmates housed in administrative confinement shall not exceed the number of bunks in the cell. Whenever such location is not possible, physical barriers shall preclude the cross association of those in administrative confinement with those in other status confinement. Administrative confinement cells shall be built to permit verbal communication and unobstructed observation by the staff. The officers assigned will exercise care to maintain the noise within the unit to a reasonable level. Visual inspections shall be conducted of each cell, to include at a minimum, observations for clothes lines, pictures attached to the walls and lockers, windows or light fixtures covered with paper, clothes or towels, and air and heater vents that have been obstructed. When sufficient natural light is unavailable, interior cell lights shall be left on during day and evening hours.

(5) Conditions and Privileges.

(a) Clothing – inmates in administrative confinement shall be provided the same clothing and clothing exchange as the general inmate population unless there are facts to suggest that on an individual basis exceptions are necessary for the welfare of the inmate or the security of the institution. In such cases, the exceptions shall be documented on Form DC6-229 and approved by the chief of security. Shower slides may be substituted for regulation shoes. Any item may be removed from the cell in order to prevent the inmate from inflicting injury to himself or herself or others or to prevent the destruction of property or equipment. If an inmate's clothing is removed, a modesty garment shall be immediately obtained and given to the inmate. If the inmate chooses not to wear the garment, the garment shall be left in the cell and this action shall be documented on Form DC6-229. Under no circumstances shall an inmate be left without a means to cover himself or herself.

(b) Bedding and linen – bedding and linen for those in administrative confinement shall be issued and exchanged the same as is provided to the general inmate population. Any exceptions shall be based on potential harm to individuals or a threat to the security of the institution. The shift supervisor or the confinement lieutenant must approve the action initially. Such exceptions shall be documented on Form DC6-229 and the Chief of Security shall make the final decision in regard to the appropriateness of the action no later than the next working day following the action.

(c) Personal Property – inmates shall be allowed to retain the same personal property as is permitted general population inmates unless there is a indication of a security problem, in which case removal or denial of any item shall be documented on Form DC6-229. An Inmate Impounded Personal Property List, Form DC6-220, designating what personal items were removed, shall be completed by security staff and signed by the inmate. The original will be placed in the inmate's property file and a copy of the form will be given to the inmate. Form DC6-220 is incorporated by reference in Rule 33-602.201, F.A.C. Inmates shall be allowed to possess religious items pursuant to the provisions of Rule 33-602.201, F.A.C. All property retained by the inmate must fit into the storage area provided.

(d) Comfort Items – inmates in administrative confinement shall be permitted the same personal hygiene items and other medically needed or prescribed items as is permitted general population inmates unless there is an indication of a security problem. Inmates in administrative confinement shall not possess any products that contain baby oil, mineral oil, cocoa butter, or alcohol. In the event certain items that inmates in administrative confinement are not normally prohibited from possessing are removed, the senior correctional officer shall be notified and must approve the action taken, or the item must be returned to the inmate. Action taken shall be recorded on the Daily Record of Special Housing, Form DC6-229, which must be reviewed by the Chief of Security. Property receipts shall be given for any personal property removed. The following comfort items shall be provided as a minimum: toothbrush, toothpaste, bar of soap, towel or paper towels, and feminine hygiene products for women, and toilet tissue.

(e) Personal Hygiene – inmates in administrative confinement shall meet the same standards in regard to personal hygiene as required of the general inmate population.

1. At a minimum each inmate in confinement shall shower three times per week and on days that an inmate works.

2. Male inmates shall be required to shave at least three times per week. The possession and use of shaving powder in administrative confinement is prohibited. An inmate housed in administrative confinement who is medically exempt from using shaving razors will be clipper-shaved at least three times per week.

3. Hair care shall be the same as that provided to and required of the general population inmates.

(f) Diet and Meals – all inmates in administrative confinement shall receive normal institutional meals as are available to the general inmate population except that if any item on the normal menu might create a security problem in the confinement unit, then another item of comparable quality shall be substituted. Utilization of the special

management meal is authorized for any inmate in administrative confinement who uses food or food service equipment in a manner that is hazardous to him or herself, staff, or other inmates. The issuance of a special management meal shall be in accordance with Rule 33-602.223, F.A.C. Any deviation from established meal service or substitutions shall be documented on Form DC6-209, Housing Unit Log, and Form DC6-210, Incident Report. Form DC6-209 is incorporated by reference in Rule 33-601.800, F.A.C., and Form DC6-210 is incorporated by reference in Rule 33-602.210, F.A.C.

(g) Canteen Items – inmates in administrative confinement shall be allowed to make canteen purchases once every other week. Items sold to administrative confinement inmates shall be restricted when reasonably necessary for institutional safety and security.

1. Inmates in administrative confinement shall be allowed to purchase a maximum of four canteen food items. In making this determination, it is the number of food items that is counted, not the type of item. For example, three packages of cookies count as three items, not one item.

2. Inmates in administrative confinement shall be allowed to purchase a maximum of five non-food canteen items. Stamps, envelopes, security pens, and notebook paper, each count as one item. For example, three security pens count as one item. Twenty-five stamps or fewer shall count as one item and two packages or less of notebook paper shall count as one item.

(h) Counseling Interviews – Inmates shall be allowed out of their cells to receive regularly scheduled mental health services as specified in an ISP unless, within the past four hours, the inmate has displayed hostile, threatening, or other behavior that could present a danger to others. Security staff shall determine the level of restraint required while inmates in administrative confinement access services outside their cells.

(i) Visiting – all visits for inmates in administrative confinement must be approved in advance by the warden or designee. The warden or designee shall notify the control room in writing when approval is given in advance of the visitor arriving at the institution. Requests for inmates in administrative confinement to visit shall be in writing to the ICT. Those inmates who are a threat to the security of the institution shall be denied visiting privileges. Attorney-client visits shall be in accordance with Rule 33-601.711, F.A.C., and shall not be restricted except on evidence that the visit would be a threat to security and order. The warden or designee shall determine whether a pre-approved visit will be contact or non-contact based on one or all of the criteria set forth in subsection (2) of Rule 33-601.735, F.A.C.

(j) Telephone – telephone privileges are allowed for emergency situations, when necessary to ensure the inmate's access to courts, or in any other circumstance when a call is authorized by the warden or duty warden.

(k) Legal Access – legal materials shall be as accessible to inmates in administrative confinement as to inmates in general population as long as security concerns permit. An inmate in confinement may be required to conduct legal business by correspondence rather than a personal visit to the law library if security requirements prevent a personal visit. However, all steps shall be taken to ensure the inmate is not denied needed access while in confinement. Although the inmate may not be represented by an attorney at any administrative hearing, access shall be granted for legal visits at any reasonable time during normal business hours to the inmate's attorney or aide to that attorney. Indigent inmates shall be provided paper and writing utensils in order to prepare legal papers. Inmates who are not indigent shall be allowed to purchase paper, security pens and envelopes for this purpose through a canteen order. An inmate with disabilities that hinder the preparation of legal correspondence will be allowed the use of auxiliary aids (writer/reader). An inmate who is provided an auxiliary aid shall also be allowed access to a certified research aide for the purpose of preparing legal documents, legal mail, or filing a grievance.

(l) Correspondence – inmates in administrative confinement shall have the same opportunities for correspondence that are available to the general inmate population.

(m) Writing utensils – inmates in administrative confinement may possess a maximum of four (4) security pens. Other types of pens and pencils shall be confiscated and stored until the inmate is released from administrative confinement status. Inmates who are in possession of working pens or pencils when placed in administrative confinement will be issued a security pen. Inmates who are not indigent must purchase additional pens when needed from the canteen. If security pens are unavailable, the inmate shall be allowed to sign out a regular pen from the confinement housing officer. All care shall be taken to ensure that an indigent inmate who requests access to a pen in order to prepare legal documents or legal mail or to file a grievance with the department has access to a pen for a time

period sufficient to prepare the legal mail, documents, or grievances. An inmate who has been provided a "writer/reader" shall be allowed access to such for the purpose of reading or preparing correspondence.

(n) Reading materials – inmates in administrative confinement shall be provided access to admissible reading material as provided in Rule 33-501.401, F.A.C., unless there is an indication of a threat to the safety, security or sanitation of the institution. If it is determined that there is a safety, security or sanitation risk, the items will be removed. Such removal of reading materials shall be documented on Form DC6-229 in accordance with paragraph (9)(c) of this rule.

(o) Library – only one book at a time may be checked out. Books shall be checked out once weekly and inmates may possess no more than one soft-back book at any given time. An inmate who receives services from the Bureau of Braille and Talking Book Library shall be allowed to have his or her tape player and devotional and scriptural materials and any other books on tape that are in compliance with admissibility requirements in Rule 33-501.401, F.A.C. Inmates will be allowed to check out one book on tape per week and possess no more than one at any given time. The actual number of tapes may be more than one per book.

(p) Exercise – those inmates confined on a 24-hour basis excluding showers and clinic trips may exercise in their cells. However, if confinement extends beyond a 30-day period, an exercise schedule shall be implemented to ensure a minimum of three hours per week of exercise out of doors. Such exercise periods shall be documented on Form DC6-229. The ICT is authorized to restrict exercise for an individual inmate only when the inmate is found guilty of a major rule violation. Inmates shall be notified in writing of this decision and may appeal through the grievance procedure. The denial of exercise shall be for no more than 15 days per incident and for no longer than 30 days in cumulative length. If the inmate requests a physical fitness program handout, the wellness specialist or the confinement officer shall provide the inmate with an in-cell exercise guide and document such on the Daily Record of Special Housing, Form DC6-229. Medical restrictions can also place limitations on the exercise periods. A disabled inmate who is unable to participate in the normal exercise program will have an exercise program developed for him or her that will accomplish the need for exercise and take into account the particular inmate's limitations. Recreational equipment may be available for the exercise period provided such equipment does not compromise the safety or security of the institution. The reasons for any exercise restrictions shall be documented on the Daily Record of Special Housing, Form DC6-229.

(q) If items of clothing, bedding or property are removed in order to prevent the inmate from inflicting injury to himself or herself or others, to prevent destruction of property or equipment, or to prevent the inmate from impeding security staff from accomplishing functions essential to the unit and institutional security, staff shall re-assess the need for continued restriction every 72 hours thereafter. The warden, based on this assessment, will make the final determination on the continued denial or return of the items. The items will be returned to the inmate when no further behavior or threat of behavior of the type leading to the restriction has occurred.

(6) Restraint and Escort Requirements.

(a) Prior to opening any cell for any purpose, including exercise, medical or disciplinary call-outs, telephone calls, recreation, and visits, all inmates in the cell shall be handcuffed behind their backs, unless documented medical conditions require that an inmate be handcuffed in front. In such cases, waist chains will be used in addition to the handcuffs.

(b) A minimum of two officers shall be physically present at the cell whenever the cell door is opened.

(c) Prior to escorting an inmate from a cell, the inmate shall be thoroughly searched. If the inmate is being taken outside the immediate housing unit, leg irons and other appropriate restraint devices shall be applied.

(d) After the required restraints are applied, the inmate has been thoroughly searched, and the cell door has been secured, the second officer is authorized to leave the area.

(e) If two inmates are being escorted from the same cell, both inmates can be escorted at the same time provided that the second officer remains to escort the second inmate and no other movement is occurring on the wing. During all other situations, only one inmate at a time shall be escorted on each confinement wing.

(f) Any inmate who has demonstrated behavior that is or could be harmful to him or herself shall be designated as a special risk inmate. If the inmate demonstrates bizarre, mentally, or self-destructive behavior, the medical department shall be immediately contacted to determine if special watch or suicide watch procedures shall be initiated.

Suicidal inmates shall be removed to a designated area where a correctional officer or health care staff provides observation. Visual checks shall be made in accordance with medical protocols or at least every 30 minutes and shall be documented on Form DC4-650, Observation Checklist, until the inmate is no longer considered a special risk inmate. Form DC4-650 is hereby incorporated by reference. A copy is available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01670. The effective date of the form is 10-12. All actions taken by staff with regard to special risk inmates shall be documented on Form DC6-229 and followed with an Incident Report, Form DC6-210. Form DC6-210 is incorporated by reference in Rule 33-602.210, F.A.C.

(g) Inmates utilized as house-men or orderlies shall be confined to their assigned cells when not working.

(7) Visits to Administrative Confinement. The following staff members shall be required to officially inspect and tour the administrative confinement unit. All visits by staff, other than the 30 minute checks described in paragraph (a) below, shall be documented on the Inspection of Special Housing Record, Form DC6-228. Form DC6-228 is incorporated by reference in Rule 33-601.800, F.A.C. The staff member shall also document his or her visit on the Daily Record of Special Housing, Form DC6-229, if any discussion of significance, action or behavior of the inmate occurs or any important information is obtained which may have an influence or effect on the status of confinement. These visits shall be conducted at a minimum of:

(a) At least every 30 minutes by a correctional officer, but on an irregular schedule. These checks shall be documented on Form DC6-209, Housing Unit Log.

(b) Daily by the housing supervisor.

(c) Daily by the shift supervisor on duty for all shifts except in case of riot or other institutional emergency.

(d) Weekly by the Chief of Security (when on duty at the facility) except in case of riot or other institutional emergency.

(e) Daily by a clinical health care person.

(f) Weekly by the chaplain. More frequent visits shall be made upon request of the inmate if the chaplain's schedule permits.

(g) Weekly by the warden and assistant wardens.

(h) At least once a week by a classification officer.

(8) Review of Administrative Confinement.

(a) An ICT member shall also review inmates in administrative confinement every week. The goal shall be toward returning the inmate to open population as soon as the facts of the case indicate that this can be done safely.

(b) Any inmate assigned to administrative confinement for more than 30 days shall be given a psychological screening assessment by a mental health professional to determine his or her mental condition. The assessment shall include a personal interview if determined necessary by mental health staff. All such assessments shall be documented in the mental health record. The psychologist or psychological specialist shall prepare a report to the ICT regarding the results of the assessment with recommendations. The ICT shall then make a decision regarding continuation of confinement. If the decision is to continue confinement, a psychological screening assessment shall be completed at least every 90-day period.

(c) If an inmate is confined for more than 30 days, the ICT shall interview the inmate and shall prepare a formal assessment and evaluation report after each 30 day period in administrative confinement. Such reports may be in a brief paragraph form detailing the basis for confinement, what has transpired since the last report, the decision concerning continued confinement and the basis for that decision.

(d) The State Classification Office (SCO) at the next onsite visit shall review such reports and may interview the inmate before determining the final disposition of the inmate's administrative confinement status.

(9) Administrative Confinement Records.

(a) A Daily Record of Special Housing, Form DC6-229, shall be maintained for each inmate as long as the inmate is in administrative confinement. The Form DC6-229 shall be utilized to document any activity such as cell searches, items removed, showers, recreation, haircuts and shaves and also unusual occurrences such as refusal to come out of a cell or refusal to eat. If items that inmates in administrative confinement are not prohibited from possessing are denied or removed from the inmate, the shift supervisor or the confinement lieutenant must approve the action initially.

The central office ADA coordinator shall be contacted within 24 hours if any item is removed that would be considered an auxiliary aid or device that ensures a disabled inmate an equal opportunity as a non-disabled inmate. The items denied or removed shall be documented on Form DC6-229 and the Chief of Security shall make the final decision in regard to the appropriateness of that action no later than the next working day following the action. The housing supervisor shall make a notation of any unusual occurrences or changes in the inmate's behavior and any action taken. Changes in housing location or any other special action shall also be noted. The Form DC6-229 shall be maintained in the housing unit for 30 days, at which time the form shall be forwarded to the ICT for review. Once reviewed, these forms shall be forwarded to classification to be filed in the institutional inmate record.

(b) A Daily Record of Special Housing – Supplemental, Form DC6-229B, shall be completed and attached to the current Daily Record of Special Housing, Form DC6-229, whenever additional written documentation is required concerning an event or incident related to the specific inmate. Form DC6-229B is incorporated by reference in Rule 33-601.800, F.A.C.

(c) An Inspection of Special Housing Record, Form DC6-228, shall be maintained in each administrative confinement unit. Each staff person shall sign such record when entering and leaving the confinement unit. Prior to leaving the confinement unit, each staff member shall indicate any specific problems including any inmate who requires special attention. No other unit activities shall be recorded on Form DC6-228. Upon completion, the Form DC6-228 shall be maintained in the housing unit and forwarded to the Chief of Security on a weekly basis where it shall be maintained on file pursuant to the current retention schedule.

(d) A Housing Unit Log, Form DC6-209, shall be maintained in each confinement unit. Officers shall record all daily unit activities on Form DC6-209, to include any special problems or discrepancies noted. The completed Form DC6-209 shall be forwarded daily to the chief of security for review.

(10) Staffing Issues.

(a) Officers assigned to a confinement unit shall be reviewed at least every 18 months. The shift supervisor or confinement lieutenant shall initiate the review by having the officer complete section I of the Special Housing Unit Rotation Review, Form DC6-295. Form DC6-295 is incorporated by reference in Rule 33-602.222, F.A.C. The required supervisor shall conduct an interview with the officer and complete section II of the Form DC6-295 and forward the form to the chief of security. The chief of security shall review personnel records, to include performance appraisals, incident reports, use of force reports, and any other documentation relevant to the officer's assignment and job performance; interview the officer and officers' supervisors for the period of review when necessary. The chief of security shall, upon completion of his or her review, complete section III of Form DC6-295 and forward the recommendation to the warden. The warden shall review the recommendation, request additional information if necessary, and make the final determination as to whether the officer continues in the current assignment or is rotated to another assignment. The warden's decision will be documented in section VI of the Form DC6-295 and returned to the chief of security for action. The chief of security shall maintain the completed Form DC6-295. Any officer assigned to a confinement post shall be authorized a minimum period of five days annual leave or a five day assignment to a less stressful post every six months.

(b) The Inspector General shall notify the warden and regional director of institutions of any officer involved in eight or more use of force incidents in an 18 month period. The regional director of institutions shall review the circumstances for possible reassignment.

*Rulemaking Authority 944.09 FS. Law Implemented 20.315, 944.09, 945.04 FS. History–New 4-7-81, Amended 6-23-83, 3-12-84, Formerly 33-3.081, Amended 4-22-87, 8-27-87, 7-10-90, 12-4-90, 3-24-97, 4-26-98, 10-5-98, Formerly 33-3.0081, Amended 2-12-01, 2-5-02, 1-19-03, 4-1-04, 3-5-06, 10-31-06, 4-8-08, 6-25-08, 6-8-09, 7-5-10, 10-7-12.*