# Florida Department of Law Enforcement

## Case Number: OR-37-0026

*Nineteenth Judicial Circuit of Florida*



*Investigative Summary:*

Department of Corrections (DOC)
Inmate Homicide

Incident Date: March 15, 2015

Case Agent:
Special Agent Eric Jester

| | |
|---|---|
| **VICTIM:** | **Christopher Cox**<br>**DC#T43015**<br>**White Male**<br>**DOB: 08/22/1975** |
| **SUSPECT:** | **Hurley Brown**<br>**DC#402730**<br>**Black Male**<br>**DOB: 09/26/1965** |
| **LOCATION:** | **Martin Correctional Institution**<br>**1150 SW Allapattah Road**<br>**Indiantown, Florida 34956** |

| INVESTIGATIVE SUMMARY |
|---|

| I. | FDLE Response to Scene | (IR-01, IR-02) |
|---|---|---|

On Sunday, March 15, 2015, Special Agent (SA) Eric Jester of the Fort Pierce Field Office of the Florida Department of Law Enforcement (FDLE) received a notification from Resident Agent in Charge (RAC) Michael Bartus that there was an alleged inmate suicide at the Martin Correctional Institution (MCI). RAC Bartus requested that SA Jester respond to MCI. SA Jester also read an email from the Florida Fusion Center that stated inmate Christopher Cox (DC# T43015) was found with a rope around his neck where he possibly hung himself. SA Jester contacted Martin County Sheriff's Office (MCSO) Crime Scene Sergeant (Sgt.) Todd Schimelfanick and requested that a crime scene detective respond to MCI. SA Jester subsequently responded to MCI.

Upon arrival to MCI, Warden Robert Hendry met SA Jester. Warden Hendry explained to SA Jester that inmate Cox's cellmate, inmate Hurley Brown (DC# 402730), spontaneously stated to a corrections officer (CO) that inmate Cox attacked inmate Hurley and that inmate Hurley "took him out." SA Jester relayed this information to RAC Bartus who subsequently contacted Nita Denton, Chief Attorney of the Martin County State Attorneys' Office.

SA Jester, Department of Corrections (DOC) Inspector Ryan Nicholas, and Crime Scene Detective Mark Weaver of the MCSO then entered MCI and proceeded to the crime scene. The crime scene was located in the D Dormitory, wing 2, cell 2210.

SA Jester examined cell D2210 from the outside initially and observed a white male identified as Cox lying on his back and partially fastened to a backboard or stretcher. SA Jester observed that the top bunk appeared unmade and a sheet was thrown on top of the bunk. There was what appeared to be a twisted white t-shirt on the left side [looking down at Cox]. Cox's blue shirt was raised. His blue pants along with one (1) pair of boxer shorts were lowered just below his groin area. A second pair of boxer shorts was pulled up above Cox's waist. There were at least two (2) blankets [one on either side] next to Cox. The bottom bunk contained two (2) pillows, one of which had blood on it. There was various personal protection equipment (PPE) on the floor and on the bottom bunk including gloves. An electrode patch was affixed to the lower right side and upper left side of Cox. SA Jester observed a small area of blood on the floor near Cox's head and blood on a pillow located on the bottom bunk. There was also a small amount of blood on the twisted T-shirt. SA Jester did not observe blood on any other clothing, walls, bunks, rags, towels, etc.

SA Jester next inspected Cox. SA Jester noted the presence of blood inside Cox's mouth. Cox's ears were purple in color. SA Jester observed swelling and a contusion [possibly hematoma] to Cox's left forehead area. Cox also had what appeared to be abrasions to the front of his neck. Cox's hands and feet did not appear to be injured. Cox's core was warm to the touch. His extremities were cold to the touch. There was significant to full rigor mortis and some lividity.

SA Jester contacted the Medical Examiner's Office. Medical Examiner Investigator William Miller, Jr. arrived on scene and conducted an examination of Cox and the crime scene. Tri- County Mortuary Transfer responded to the scene, removed Cox's body, and transported Cox's body to the Medical Examiner's Office for autopsy.

| II. | EMS Response to MCI | (IR-26, IR-34) |
| --- | --- | --- |

On Wednesday, April 8, 2015, SA Jester interviewed Paramedic Kristian Nader at Station 24 in Indiantown, Florida. During the sworn, digitally recorded interview, Paramedic Nader stated that he was assigned to work Station 24 on March 15, 2015. Paramedic Nader was responding to a motor vehicle accident and re-routed to MCI for a medical emergency. Paramedic Nader stated that the original call was for cardiac arrest. Paramedic Nader stated that when he arrived to cell D2210 he observed two (2) MCI medical personnel.    Cox was hooked up to the Automated External Defibrillator (AED) and no signs of life were observed. Paramedic Nader asked the nurses if the AED ever advised to shock. According to Paramedic Nader, the nurses stated that it had not. Paramedic Nader placed Cox on a backboard and connected Cox to a monitor. Paramedic Nader stated that Cox was "flat-lined, asystole." Paramedic Nader described Cox as having cyanosis from his upper chest to the back of his head. According to Paramedic Nader, it appeared Cox had "been down" at least 45 minutes. Paramedic checked Cox's mouth and stated that his jaw had some signs of rigor mortis. At that time, Paramedic Nader pronounced Cox deceased. SA Jester inquired of Paramedic Nader observed any injuries. Paramedic Nader stated he did not recall any injuries. Paramedic Nader stated that Cox was warm and thought they would have to transport. Once Paramedic Nader began his assessment, he determined   that Cox was deceased. Paramedic Nader provided SA Jester with run #4236.

On Monday, April 20, 2015, SA Jester received reports and documents from Tammy Pasqualone,  Battalion Chief Secretary, of the Martin County Fire Rescue (MCFR). SA Jester reviewed the report and observed that MCFR was called to MCI on March 15, 2015, to respond to a cardiac arrest. The call originated at 19:55:33 hours and was dispatched at 19:57:44 hours. MCFR arrived at MCI at 20:10:00 hours and had patient contact at 20:19:00 hours. Paramedic Kristian Nader and an EMT  responded to MCI.

| III. | Documents Obtained from MCI Reference Incident | IR-04 |
| --- | --- | --- |

On Wednesday, March 18, 2015, SA Jester received several logs from Inspector Scott Thomas of the Martin Correctional Institution (MCI). SA Jester reviewed the logs and determined that each log was written on a Department of Corrections (DOC) Housing Log.   The logs were entitled: D, "B"-Dorm, wing enter exit (Delta), and D-Wing 2 Cell D2210.

**The following logged times contain information significant to this investigation found on log "D":**

| | |
|---|---|
| 7:00 PM | Sergeant (Sgt.) Robert Feipel, CO Christopher Rose, assumed duties and responsibilities of housing unit D and subsequently conducted an inmate count |
| 7:25 PM | Inspections of the doors, and non-cell windows began |
| 7:25 PM | Nurse [Carolyn Conrad] entered D dormitory to pass o |
| 7:29 PM | Sgt. Feipel and CO Rose open cell 2210 with nurse [C |
| 7:31 PM | Advised Medical of unresponsive inmate |
| 7:35 PM | Captain (Capt.) Charles Marteens and CO David Baile |
| 7:41 PM | Nurses Leah Darlington and Rashena Williams arrive |
| 7:43 PM | CO Shedeldra Townsend enters with defibrillator |
| 8:16 PM | EMS arrives |
| 8:24 PM | CO Ricardo Velez exits with evidence from inmate Bro |
| 8:24 PM | EMS reports inmate [Cox] deceased |

The log was maintained by correctional officer (CO) Wisly Mathias and signed off on by Sgt Fiepel.

**The following logged times contain information significant to this investigation found on log "B"- Dorm:**

| | |
|---|---|
| 9:08 PM | Inmate Brown stated that he thought he broke his right hand |
| 9:33 PM | Inmate Brown stated that his arms and hands hurt |
| 23:52 | FDLE enters to document injuries to inmate Brown |
| 0:00 | Inmate Brown placed in restraints to be interviewed by FDLE |
| 3:05 AM | Inmate Brown to be transferred |

The log was maintained by correctional officer (CO) A. Harvey and CO Brown.

**The following logged times contain information significant to this investigation found on log "wing enter exit (Delta)":**

Times began at 9:30 PM and continued until 1:36 AM.     This log listed all individuals who entered/exited wing 2 of the D Dormitory on March 15-16, 2015.

The log was signed off on by Sgt Fiepel.

**The following logged times contain information significant to this investigation found on log "D-Wing 2 Cell D2210" and will be documented as the crime scene log:**

| | |
|---|---|
| 7:24 PM | Nurse Conrad entered D Dorm to pass out medication |
| 7:25 PM | Sgt. Feipel entered dorm to assist nurse Conrad |
| 7:28 PM | CO Rose entered wing 2 |
| 7:29 PM | opened 2210 |
| 7:31 PM | advised Medical of unresponsive inmate |
| 7:35 PM | Captain (Capt.) Martins and CO Bailes enter D2 |
| 7:41 PM | Nurses Darlington and Williams arrive with a stretcher |
| 7:43 PM | CO Townsend enters with AED |
| 8:05 PM | Nurse Jenell Jones departs |
| 8:08 PM | Nurse Conrad entered D2210 |
| 8:11 PM | Nurse Conrad departs D2210 |
| 8:18 PM | EMS arrives at D2210: Myers, Thatcher, Nader, Hartman, and Davidson |
| 8:21 PM | Nurse Darlington and Nurse Williams depart D2210 |
| 8:24 PM | EMS pronounced inmate Cox deceased |
| 8:28 PM | Cell 2210 secured |
| 1:36 AM | Tri County removed inmate Cox |
| 1:37 AM | Crime scene cleared |

The log was maintained by correctional officer (CO) Chase and signed off on by Sgt Fiepel.

## IV. Documents/Information Obtained from MCI Reference Inmate Cox and Inmate Brown (IR-05, 10)

On Wednesday, March 18, 2015, SA Jester received a Daily Record of Special Housing from Inspector Scott Thomas of the Martin Correctional Institution (MCI). SA Jester reviewed the document and determined that Cox was initially placed in special housing on February 3, 2015 in the D Dormitory, wing 2, cell 2214U. On March 4, 2015 under the "action and remarks" section, it read "psych-evals." On March 5, 2015 under "remarks", it stated that inmate took a handful of pills in front of Nurse Doyle at 7:50 PM and that nurse Doyle conducted a self-harm check at 10:15 PM. SA Jester did not observe any record on Cox being moved to cell 2210. Furthermore, on March 13, 2015, when Cox was allegedly moved to cell 2210 the record only reflected satisfactory appearance and attitude.

SA Jester asked Inspector Thomas to review any visitor or phone logs of Cox. Inspector Thomas stated that Cox did not have any visitors or make any phone calls while incarcerated at MCI. Inspector Thomas provided emergency contact information for Cox, which was Brenda Truitt, Cox's grandmother. Inspector Thomas indicated that Cox was received at MCI on January 14, 2015 and was placed in protective management (PM) February 3, 2015. Once in PM, Cox was not able to have visitors or make phone calls.

Additionally, as Hurley Brown was in PM he was not allowed to have visitors or make phone calls. Brown was in PM prior to Cox being placed in the same cell and was transferred from MCI after the incident.

## V. Sworn Interviews of Inmates (IR-15, IR-16, IR-17, IR-28, IR-35)

### Inmate Ernest Powell III (IR-15)
*Serving 20 years for Burglary with Assault and Sexual Battery with a Weapon or Force*

On Monday, March 23, 2015, SA Jester interviewed inmate Ernest Powell, III (DC# P09831) at MCI. During the sworn, digitally recorded interview, Powell stated that he was housed in the D Dormitory, wing 2, cell 2211 on March 15, 2015. Powell stated that when the incident occurred, he heard noise, "boom, boom, boom" followed by silence. Powell then heard inmates screaming, "Man down!" SA Jester asked Powell to elaborate on the noises that he heard. Powell stated that there was no yelling or screaming from the cell. Powell heard "slinging around" and knocks on the wall. SA Jester asked if Brown yelled man down. Powell stated that the inmate in D2209 (later identified as Derek Damiencedrick Wells aka Derek Cedri) yelled "man down, seizure" first, and then everyone else followed.

Powell stated that Cox was in cell D2214 before being moved to cell D2210. Powell stated that Cox seemed very uncomfortable about moving into cell D2210. Powell indicated that he did not know if it was a set up. Powell stated that he talked to Cox while in confinement before being moved to the D Dormitory. Powell stated that he did not know of any problems that Cox had. Powell stated that an officer told Powell's

cellmate (later identified as Peter Larangera) that Brown choked out Cox and stomped on his throat. Powell stated that it took officers approximately 25-30 minutes of inmates banging on the doors for officers to respond. (Powell added that inmates frequently kicked the doors and yelled for no reason.) Powell stated that when an officer finally arrived to the cell, the officer checked the cell, opened the door flap, and gave inmate Brown medication. According to Powell, the nurse told the officer to cuff the other inmate, hurry up, and open the door. Powell stated that Brown was removed from the dorm.

SA Jester asked Powell about the 30-minute checks that were conducted by officers in the protective management (PM) wing. SA Jester asked if the officers woke everyone up or just looked in the windows of the cell doors. Powell stated that most of the times the lights are on in the cells but sometimes the lights are off and the officers shine a flashlight into the cell.

### Inmate Peter Larangara          (IR-16)
*Serving 3 years for Burglary and Grand Theft of Motor Vehicle*

On Monday, March 23, 2015, SA Jester interviewed inmate Peter Larangera (DC# W07656) at MCI. During the sworn, digitally recorded interview, Larangera stated that he was housed in the D Dormitory, wing 2, cell 2211 on March 15, 2015. Larangera added that he was placed in this cell on March 12, 2015 and was in the work camp prior to that. Larangera stated that when the incident occurred, he heard banging in cell D2210. Larangera described the noise as "thumping." Larangera then heard inmates screaming, "Man down," and kicking the cell doors. SA Jester asked Larangera if he heard any screaming or fighting. Larangera stated that he did not hear any screaming or cussing, just a "couple of good solid thumps." Larangera stated that all the inmates yelled "man down, seizure" and kicked the cell doors. Larangera added that the inmates yelled and kicked the cell doors about every 15 minutes all day every day.

SA Jester inquired if he heard any arguing or altercations prior to the incident on March 15, 2015. Larangera stated that he never heard any fighting or arguing. Larangera added that the air vents were open and that one could hear everything from the cells on both sides of his cell. Larangera stated that he did not hear any conversations from D2210.

SA Jester asked Larangera if he had anything else to add. Larangera stated that MCI was known as a facility in which an inmate would kill a cellmate whom the inmate disliked. Larangera stated that every inmate was armed at MCI and that inmates would often stab each other. Larangera added that he had been in 10 different prisons and that MCI was the worst. Larangera stated that security checks of the dorms were usually at the top of the hour or close to the top of the hour, and an inmate could easily time the checks if they wanted to do something. Larangera stated that he believed the incident occurred approximately 15 minutes after the last security check. Larangera added that it took the officers at least 30 minutes to respond to the cell once the yelling began. Larangera indicated that the responding officer did not want to open the cell door. Larangera stated that the door was finally opened and that the nurse and officer went into cell D2210.

**Inmate Derek Cedri**          **(IR-17)**
*Serving 10 years for Burglary, Grand Theft, Trafficking in Stolen Property, False VIN*

On Monday, March 23, 2015, SA Jester interviewed inmate Derek Damiencedrick Wells aka Derek Cedri (DC# T20840) at MCI. Prior to the interview, Cedri stated that he had an issue with a correctional officer (CO) and wished to be moved from MCI in return for providing a statement. SA Jester explained that it was an internal issue and SA Jester would not make promises in exchange for a statement. Additionally, Cedri mentioned that he had "visions" a few days prior to Cox being moved into cell D2210. Cedri stated that he saw Cox's face in his window, then again as he was looking up at the underneath of the top bunk. Cedri stated that these "visions" allowed him to know that something was going to happen to Cox.

During the sworn, digitally recorded interview, Cedri stated that his real name was Derek Wells but that upon entering the Department of Corrections (DOC) his name was changed to Derek Cedri. Cedri stated that he was housed in the D Dormitory, wing 2, cell 2209 on March 15, 2015. Cedri stated that at approximately 7:15PM-7:20PM he heard talking and fighting coming from cell D2210 through the vent. Cedri stated that he asked what was going on and inmate Hurley Brown stated everything was alright. Cedri stated that Cox then yelled, "Help, Ced, everything is not alright!" Cedri stated that it sounded like Cox was being strangled. Cedri stated that he observed a CO (Later identified as CO David Bailes) doing a perimeter check of the C Dormitory and that he yelled at CO Bailes to tell him a man was getting killed in the cell next to Cedri's. According to Cedri, CO Bailes wrote a report about the incident. Cedri then got the other inmates inside the D Dormitory to yell and scream, "Man down, seizure, room 10 top," and to beat their cell doors.

Cedri stated that a CO and a nurse then came into wing 2 and delivered medications to cell four on the bottom. Cedri stated that the CO and nurse ignored the calls for help. After delivering the medications, the CO and nurse then exited the wing. About 5-10 minutes later, the CO and nurse came back into wing two and then went to cell D2210. Cedri added that the cell lights were off during the incident and that the lights did not come back on until they opened cell D2210.

Cedri next stated that the incident happened because Brown wanted to have sex with Cox. According to Cedri, Cox stated that he did not "get down like that" and that Brown began to fight Cox to have sex. This fight lead to the murder and Cedri stated that he thought Brown still had sex with Cox. Cedri stated that Brown had a lot of time to clean up everything. Cedri stated that he heard water running and the sound of a rag wiping the wall in cell D2210 after the incident. Cedri stated that Brown made the crime scene look like Cox fell off his bunk and hit his head.

SA Jester asked Cedri what he knew about Cox and Brown. Cedri stated that Brown was "bugged out" and was nicknamed "bug." Cedri added that Brown was facing two (2) life sentences and had nothing to lose. Cedri stated that Brown was approximately 210-220 pounds and that Cox was approximately 170 pounds. Cedri stated that he told the CO's not to put Cox in the cell with Brown because Cox was a "small, young, good looking white boy." Cedri stated that Brown never came to the cell door to tell Cedri that

Cox was having a seizure. Cedri stated that one evening prior to the incident, Cedri was trying to trade Brown a hamburger for a peanut butter sandwich. During this time, Cox was allegedly talking over Brown. Cedri claimed that Brown said, "Don't try to    talk when I ain't talking to you. The only thing I do to crackers is fuck 'em."

SA Jester's note: Brown is approximately 165 pounds and Cox 134 pounds. Brown is not facing two (2) life sentences and is scheduled to be released in 2029.

**Inmate Michael Gallagher          (IR-28)**
*Released on April 27, 2015 after serving 3 years for Burglary and Trafficking in Stolen Property*

On Sunday, March 15, 2015, SA Jester interviewed inmate Michael Gallagher (DC# V37599) at MCI. During the sworn, digitally recorded interview, Gallagher stated that he was housed in the D Dormitory, wing 2, cell 2217U on March 15, 2015. Gallagher added that he was placed in this cell on March 1, 2015, and had been in the D Dormitory since December 21, 2014.

Gallagher stated that he looked out of his cell and observed a black inmate (later identified as Hurley Brown) choking out inmate Cox. Gallagher stated that he could only see Brown's arm around Cox's neck. Gallagher added that Cox's eyes appeared to be "bulging out of his head." Both inmates then disappeared from view. Approximately 10-15 minutes later, the inmates began yelling "man down" so he looked out of his cell door window again. SA Jester asked Gallagher if he observed any fighting prior to or after he observed Brown choking Cox. Gallagher indicated that he did not. Gallagher stated that he observed a blue inmate shirt covering the window of the cell door approximately five (5) minutes after he observed Brown choking Cox. Gallagher stated that inmate Cedri told Gallagher that Brown yelled through the vent to Cedri that Cox was down and to kick on the door. According to Gallagher, Cedri stated that he heard Brown and Cox fighting and that it sounded like someone's head was getting beat on the bunk. Gallagher stated that when Brown was taken from the cell that he, "...had a big 'ole   shit eating grin on his face...like he was pleased with what he had just done." Given the cell door windows are only approximately 4 inches wide, SA Jester asked Gallagher to describe how he could see into a cell across the wing and make out anything. Gallagher explained that he could see the inmates' when they were at the cell door window but not after they moved from being directly in front of the window. SA Jester asked Gallagher if he could hear Brown and Cox yelling or arguing. Gallagher stated that it was too loud in the dormitory to hear anything not directly next to his cell.

SA Jester inquired if Gallagher heard of any arguing or altercations prior to the incident on March 15, 2015. Gallagher stated that he never heard of any issues with Brown and Cox. SA Jester asked Gallagher what time he believed the incident to have occurred. Gallagher stated approximately 6:50PM-7:00PM. He estimated this time because every day was the same routine. Gallagher stated that at 6PM, the officers would pick up food trays and the inmates would sweep up the dormitory. Gallagher stated that it was right at shift change, approximately 30-35 minutes after the floors were swept. SA Jester asked if Gallagher witnessed the nurse handing out medications. Gallagher stated that he was doing pushups prior to witnessing Brown choking Cox. Gallagher added that once the

inmates began yelling and kicking at the door, the Sergeant (Sgt.) (later identified as Robert Feipel) and the nurse (later identified as Carolyn Conrad) handed out medications in wing two until approximately cell 2107. Sgt. Feipel and Nurse Conrad then exited the wing. Several minutes later, they returned to wing two and Sgt. Feipel and Nurse Conrad walked slowly to cell D2210. Gallagher stated that it was approximately 35 minutes after he witnessed Brown choking Cox before anyone arrived to check on Cox.

Gallagher explained that Brown's inmate prior to Cox attempted to kill himself several times. Gallagher stated that the attempts were in an effort to get out of the cell with Brown. Gallagher stated that he believed this inmate and Brown were "gassed" because of the attempt. Gallagher only knew the inmate as being a black male nicknamed "bald head." Gallagher added that the inmate was moved to a first floor cell and attempted suicide again.

Gallagher stated that he was being released from the Department of Corrections (DOC) in approximately two (2) weeks. Gallagher provided a contact number of 386-576-4063 and his mother's name, Shelley Stewart. Gallagher stated that he would testify in court if needed.

**Inmate Shernerd Richardson      (IR-35)**
*Serving 15 years for Lew and Lascivious Battery Victim 12-15*

On Tuesday, April 21, 2015, SA Jester interviewed inmate Shernerd Richardson (DC# 962778) at the Union Correctional Institution (UCI). Also present during the interview was RAC Bartus.

During the sworn interview, Richardson stated that he was incarcerated at MCI for approximately five to six months prior to being transferred to UCI on March 16, 2015. Richardson stated that he was in the D Dormitory, wing 2, cell 210 for several weeks. Richardson was at one-point cellmates with Hurley Brown (DC# 402730). Richardson stated that Brown never had any issues with Richardson and did not express any homosexual tendencies or racism towards whites. Richardson stated that the only issues Brown had were with the guards at MCI. Richardson stated that at some point the end of February or beginning of March, he expressed to Brown that he was going to kill himself. Richardson told Brown that he wanted to give up and kill himself before the inmates or guards killed him. According to Richardson, Brown tried to talk Richardson out of committing suicide. Richardson took the blade from his shaving razor and began to cut his wrist and arm area. Brown started kicking the cell door and yelling to the guards that Richardson was attempting to kill himself. Richardson stated that Sergeant (Sgt.) Jake Crouch and an unidentified captain came to the cell, observed Richardson cutting himself, laughed at him, and then left. Richardson stated that they later came by the cell and Richardson told them he was going to cut his throat. Richardson then began to cut his throat with the blade. Richardson stated that Sgt. Crouch then opened the food port on the door and sprayed a chemical agent inside the cell. The guards took Richardson and Brown to the showers and treated them for the exposure. Richardson was moved to the D Dormitory, wing 3 after the incident.

Richardson stated that he attempted suicide while in D3 by hanging himself. Richardson described the attempt as tying a bed sheet to the top bunk and around his neck. Richardson then dove head first off the bunk in an effort to snap his neck. Richardson stated that the condition of MCI, the fact that inmates were always being stabbed, and that guards were paying inmates to harm other inmates were the reasons he tried to kill himself. Richardson stated that he wanted moved out of MCI for his safety and no one would assist him. Richardson recalled that the night before he was moved to UCI, a white inmate (Cox) was murdered in the D2 dormitory. Richardson did not know that the inmate was Brown's cellmate. Richardson also did not have any knowledge of how or why Cox was murdered.

| VI. | Sworn Interviews and Incident Reports of DOC Officers  (IR-07, IR-08, IR-09, IR-11, IR-22, IR-24, IR-23, IR-25) |
|---|---|

### Sgt. Robert Feipel  (IR-07, IR-11, IR-24)

#### *Incident Report*

SA Jester reviewed Incident Report (430-0315-113A) and determined that Sergeant (Sgt.) Robert Feipel authored the report. Sgt. Feipel stated that at approximately 7:25PM he was escorting Nurse Carolyn Conrad in the D Dormitory, wing 2, as she delivered medication. Sgt. Feipel observed inmate Cox lying face down in the corner of cell D2210 with his face in a pillow. Sgt. Feipel handcuffed inmate Hurley Brown and called for assistance. At 7:29PM, the cell door was opened and restraints were placed on Brown. Correctional Officer (CO) Christopher Rose then escorted Brown to shower one. Nurse Conrad entered the cell and Sgt. Feipel "untied a noose from Inmate Cox's throat." Nurse Conrad checked Cox for vital signs via Cox's wrist and stated that Cox was dead. Sgt. Feipel reported that he asked Nurse Conrad if she wished to perform CPR. According to Sgt. Feipel's report, Nurse Conrad stated, "He's dead and needs a stethoscope." Sgt. Feipel called for additional medical staff and notified the shift officer in charge. Nurses Leah Darlington and Rashena Williams arrived to the cell and started CPR at approximately 7:41PM.

#### *Inspector Nicholas Interview of Sgt. Feipel*

On Wednesday, March 18, 2015, SA Jester received an audio file of an interview from Inspector Ryan Nicholas. SA Jester listened to the audio file that contained an interview conducted between Sergeant (Sgt.) Robert Feipel and Inspector Nicholas. The interview was conducted on March 15, 2015. Sgt. Feipel indicated that he had been employed as a sergeant with MCI since approximately 2004. On March 15, 2015, Sgt. Feipel was assigned to the D Dormitory. His shift began at 7:00PM. Sgt. Feipel stated that his first security check of wing 2 was at approximately 7:25PM while he was making the medication rounds with the nurse.

Sgt. Feipel stated that he was escorting Nurse Carolyn Conrad in the D Dormitory, wing 2, as she delivered medication. Sgt. Feipel stated that as he entered wing 2 the inmates were making noises. At approximately 7:29PM, Sgt. Feipel observed inmate Cox lying face down in the corner of cell D2210 with his face in a pillow and arms to his side. Sgt. Feipel called for assistance and handcuffed inmate Hurley Brown, the cellmate.

Correctional Officer (CO) Christopher Rose assisted in securing Brown and then escorted Brown to the shower.

Sgt. Feipel entered the cell, rolled Cox over, placed Cox in restraints, and untied the noose from Cox's throat. Sgt. Feipel described the noose as a twisted up piece of sheet. Nurse Conrad checked Cox for vital signs and stated that Cox was dead. Sgt. Feipel stated that other nurses arrived to the cell and started CPR at approximately 7:41PM.

Inspector Nicholas asked if Brown made any statements to him. Sgt. Feipel stated that Brown voluntarily told Sgt. Feipel that he "took him out." Sgt. Feipel indicated that this occurred when Sgt. Feipel was taking Brown's clothing. Sgt. Feipel added that Cox jumped on or attacked Brown while Brown was in his bed. Sgt. Feipel stated that Brown mentioned having problems with Cox earlier but did not elaborate.

### SA Jester Interview of Sgt. Feipel
On Wednesday, April 1, 2015, SA Jester interviewed Sergeant (Sgt.) Robert Feipel at MCI. On March 15, 2015, Sgt. Feipel was assigned to run the D Dormitory. His shift began at 7:00PM. Sgt. Feipel stated that his first security check was of wing one. He then moved to wing two with Nurse Carolyn Conrad to hand out medications when he came across the situation with Cox. SA Jester asked about the frequency of security checks in the D Dormitory. Sgt. Feipel stated that security checks usually occurred every 30 minutes and typically just before shift change, usually right before 7:00PM. Sgt. Feipel stated that SA Jester could check the Housing Log to ascertain when the last security check prior to his occurred.

During the sworn, digitally recorded interview, Sgt. Feipel stated that Cox was lying face down in the corner of the cell with a pillow underneath his face when he first encountered Cox. Cox's arms were straight by his side and there was something around Cox's neck. Sgt. Feipel called for assistance from CO Christopher Rose. Sgt. Feipel stated that he initially utilized the food port of the cell door to handcuff inmate Hurley Brown. CO Rose then escorted Brown to the shower. According to Sgt. Feipel, Brown stated that Cox had a seizure. Sgt. Feipel entered the cell then secured Cox with handcuffs behind his back and leg irons. (This was a security measure as inmates often faked injuries to harm a CO or cause another type of disturbance.) Sgt. Feipel rolled Cox over and untied the noose from Cox's throat. Sgt. Feipel described the noose as a twisted up cloth. The noose was tied in front. SA Jester asked how Cox appeared when he first entered cell D2210. Sgt. Feipel stated that Cox had neck injuries, blood on the right side of his mouth, and an injury to his temple. Sgt. Feipel indicated that Cox's eyes were stuck open and glazed. SA Jester inquired if the cell lights were off at the time he first observed Cox. Sgt. Feipel stated that the lights were on and not typically shut off until after master count. Master count occurred at 9:30PM or 10:00PM. SA Jester asked Sgt. Feipel if he utilized a flashlight to see inside of cell D2210. Sgt. Feipel stated that he did not.

According to Sgt. Feipel, Nurse Conrad checked Cox for a pulse and stated that Cox was dead. SA Jester asked where Nurse Conrad checked for a pulse. Sgt. Feipel stated Cox's right wrist. SA Jester asked if Nurse Conrad checked for a pulse anywhere else such as Cox's neck. Sgt. Stated Feipel stated that she did not. SA Jester asked if Nurse Conrad attempted CPR. Sgt. Feipel responded that she did not. Sgt. Feipel added that he asked

Nurse Conrad if they were going to perform CPR and Nurse Conrad stated, "no," that "he (Cox) was dead."

SA Jester asked Sgt. Feipel if every CO was trained in First Aid and CPR. Sgt. Feipel stated that they were. Sgt. Feipel stated that if medical personnel were on scene that the medical personnel were in charge and the CO's would only assist. Sgt. Feipel stated that if no medical personnel were at the scene of a medical emergency then they would render aid until someone else qualified relieved them. Sgt. Feipel stated that if Nurse Conrad would have begun CPR on Cox that he would have assisted.

SA Jester asked Sgt. Feipel if he had any further contact with Brown after he initially had him removed from the cell. Sgt. Feipel stated that at some point he collected Brown's clothing. SA Jester asked if Brown made any statements to him. Sgt. Feipel stated that Brown said Cox attacked him while he was sleeping and that he "took him out." Sgt. Feipel stated that Brown also said, "What's a murder?"

SA Jester asked Sgt. Feipel if he was familiar with inmate Derek Cedri. Sgt. Feipel stated he was not. SA Jester mentioned to Sgt. Feipel that Cedri allegedly told CO David Bailes about yelling to a CO at the C Dormitory that someone was being killed in the cell next to his; that CO Bailes reported this to Sgt. Feipel. Sgt. Feipel stated that he had no knowledge of this.

**Captain Charles Martens        (IR-08)**

SA Jester reviewed Incident Report (430-0315-113) and determined that Captain (Capt.) Charles Martens authored the report. Capt. Martens reported that at approximately 7:25PM Sgt. Feipel was escorting Nurse Carolyn Conrad in the D Dormitory, wing 2, as she delivered medication. Sgt. Robert Feipel observed inmate Cox lying face down in the corner of cell D2210 with his face in a pillow. Sgt. Feipel ordered both inmates to submit to wrist restraints, and inmate Brown complied. Inmate Cox was unresponsive. Sgt. Feipel called for assistance and CO Rose arrived. Brown was removed from the cell. Nurse Conrad entered the cell and checked Cox for a pulse. Nurse Conrad Cox found no pulse and advised Sgt. Feipel. No CPR was started. According to the report, Sgt. Feipel asked Nurse Conrad if they should start CPR, but Nurse Conrad responded that Cox was dead. Capt. Martens arrived at the cell and was advised by Nurse Conrad that Cox had no pulse and was presumed dead. Capt. Martens then considered the cell a crime scene and closed the door. Capt. Martens then requested additional medical staff. At approximately 7:41PM, Nurses Rashena Williams and Leah Darlington arrived with a stretcher. The cell was opened on order of Capt. Martens at which time the nurses began CPR. Capt. Martens reported that at approximately 7:49PM CO Sheldeldra Townsend arrived with an ambulatory bag. At approximately 7:50PM, EMS was notified and arrived at the cell at approximately 8:18PM. A paramedic pronounced Cox deceased at approximately 8:24PM.

Capt. Martens also reported that the Warden, Duty Warden, Emergency Action Center, and on call Inspector's Office were notified of the incident. Cell D2210 was closed off as a crime scene and CO Rose was assigned to document the crime scene log. Inmate

Brown's clothing was removed and placed into evidence bags. Inmate Brown was transported to Florida State Prison (FSP) at approximately 4:00AM on March 16, 2015.

## CO Christopher Rose          (IR-09)

SA Jester reviewed Incident Report (430-0315-113B) and determined that CO Christopher Rose authored the report. CO Rose reported that at approximately 7:29PM, he responded to Sgt. Feipel's request for assistance in the wing 2 housing unit of the D Dormitory. CO Rose arrived to cell D2210 where Sgt. Feipel and Nurse Conrad were standing in front. CO Rose wrote that he observed inmate Cox motionless on the floor of the cell. CO Rose indicated that inmate Hurley Brown claimed Cox had a seizure. Brown was placed in restraints and CO Rose and Sgt. Feipel entered the cell. CO Rose and Sgt. Feipel placed inmate Cox in hand restraints and CO Rose then escorted Brown to shower one where Brown was secured. Capt. Martens and CO David Bailes arrived at approximately 7:35PM at which time CO Rose departed the wing and attempted to find a new cell location for Brown. CO Rose returned to D2 at approximately 8:00PM and maintained an emergency housing log.

On Wednesday, April 1, 2015, SA Jester interviewed correctional officer CO Rose at MCI. During the sworn, digitally recorded interview, CO Rose stated he was working on March 15, 2015, assigned to the D Dormitory. CO Rose stated that Sgt. Feipel requested assistance at which time he responded. When CO Rose arrived at cell D2210, Sgt. Feipel stated that an inmate was having a seizure. CO Rose observed inmate Cox on his side with his face in a pillow, motionless. CO Rose indicated that inmate Cox was not having a seizure as a seizure was accompanied with movement and Cox was not moving at all. CO Rose next escorted inmate Hurley Brown to shower one. CO Rose returned to cell D2210 and watched the events unfold. CO Rose was next tasked with finding alternate housing for Brown. CO Rose was then ordered to maintain cell security and keep the Crime Scene Log.

SA Jester asked if Brown made any comments or statements to CO Rose. CO Rose stated that the only thing Brown told him was that Cox had a seizure. SA Jester asked CO Rose if anyone watched Brown after he was placed in the shower. CO Rose stated that he did not believe anyone watched Brown.

CO Rose stated that he was "stunned" by Nurse Conrad's lack of action. CO Rose stated that he believed Nurse Conrad only checked for a pulse in Cox's wrist and never checked in Cox's neck area. Additionally, CO Rose stated that he heard Nurse Conrad comment that she could not do anything for Cox. Furthermore, CO Rose stated that Nurse Conrad asked for a stethoscope. CO Rose said that he believed when he returned to cell D2210 from placing Brown in the shower that Nurse Conrad was handing out medications in cell D2212 and not doing anything with Cox.

Prior to the conclusion of the interview, CO Rose mentioned that inmate Michael Gallagher, who was housed in D2217, mentioned that he saw the incident happen. CO Rose stated that it was possible to see inside cell D2210 from cell D2217. After the

interview, CO Rose contacted Gallagher who informed CO Rose that he would provide a statement to SA Jester.

**CO David Bailes**                    **(IR-22)**

On Monday, March 30, 2015, SA Jester interviewed CO David Bailes at MCI. During the sworn, digitally recorded interview, CO Bailes stated that he worked on March 15, 2015. CO Bailes indicated that he worked 7PM to 7AM that date. CO Bailes was assigned to work in the C Dormitory. SA Jester asked if CO Bailes conducted a perimeter security check of the C Dormitory that night. CO Bailes stated that he did not conduct the perimeter security check that night. CO Bailes stated that when he arrived to the C Dormitory for his shift, his Sergeant (Sgt.), Ryan Reynolds, asked CO Bailes to go to the control room to pick up equipment. CO Bailes subsequently went to the control room. CO Bailes gathered the equipment and was going back to the C Dormitory when he stopped to talk to Capt. Martens. CO Bailes heard Sergeant (Sgt.) Robert Feipel call on the radio for assistance at the D Dormitory. Capt. Martens and CO Bailes then responded to the D Dormitory.

SA Jester asked CO Bailes if he knew who conducted the C Dormitory perimeter security check that night. CO Bailes stated that when he was going to the control room he observed CO Andres Huertas-Rodriguez begin the check.

SA Jester asked CO Bailes if at any time he heard an inmate yell or attempt to contact him from the D Dormitory or if CO Bailes wrote any reports that night. CO Bailes responded, "No." SA Jester inquired if CO Bailes had any contact with inmate Derek Cedri that night. CO Bailes indicated that while he was inside the D Dormitory, Cedri told him he "hollered" at an officer out the window. CO Bailes subsequently passed this information on to the D Dormitory Sgt. (identified as Sgt. Feipel). CO Bailes stated that he was assigned to keep the inmates under control in the D Dormitory as EMS was in the dormitory. CO Bailes then reported to the C dormitory for the remainder of his shift. CO Bailes had no contact with inmate Hurley Brown.

**CO Andres Huertas-Rodriguez**      **(IR-23)**

On Monday, March 30, 2015, SA Jester interviewed CO Andres Huertas-Rodriguez at MCI. During the sworn, digitally recorded interview, CO Huertas-Rodriguez stated that he worked 2:00PM to 10:00PM on March 15, 2015. CO Huertas-Rodriguez was assigned to work in the C Dormitory. SA Jester asked if CO Huertas- Rodriguez conducted a perimeter security check of the C Dormitory that night. CO Huertas-Rodriguez stated that he could not recall if he conducted the perimeter security check that night. SA Jester stated that CO Bailes stated Huertas-Rodriguez conducted the check and that the C shift was working. This helped Huertas-Rodriguez's memory and he stated that he recalled doing the perimeter check.

SA Jester asked CO Huertas-Rodriguez if at any time he heard an inmate yell or attempt to contact him from the D Dormitory. CO Huertas-Rodriguez responded, "No." CO Huertas- Rodriguez added that he did not hear anything from the D Dormitory while

outside. SA Jester asked Huertas-Rodriguez if he knew of the incident in the D Dormitory. CO Huertas-Rodriguez stated that he was inside the C Dormitory at the time and heard a radio call requesting medical assistance. CO Huertas-Rodriguez never entered the D Dormitory on March 15, 2015.

| VII. | Sworn Interviews and Incident Reports of Nurses (IR-39, IR-42, IR-44, IR-45, IR-46, IR-47) |
|------|---------------------------------------------------------------------------------------------|

**Rashena Williams, LPN**      **(IR-13, IR-31)**

On Friday, March 20, 2015, SA Jester interviewed Nurse Rashena Williams at MCI. During the sworn, digitally recorded interview, Nurse Williams indicated that she was certified as a Licensed Practicing Nurse (LPN). Nurse Williams added that she was currently employed by Wexford Health Sources Incorporated and had been for approximately three and a half months. Nurse Williams had been a nurse for approximately two (2) years.

SA Jester inquired as to Nurse Williams' duties at MCI. Nurse Williams stated that she would typically hand out medications to inmates in the various dormitories. Nurse Williams added that if the inmates were on lockdown Nurse Williams would work from the Medical Unit. Once the medications were handed out, Nurse Williams would assist in other medical functions.

SA Jester inquired as to the protocol was for call outs to dormitories for emergencies. Nurse Williams stated that if an emergency were called out correctly they would respond with the appropriate supplies. Nurse Williams stated that on March 15, 2015, she was called to respond to an inmate that had a seizure and responded with a backboard. Nurse Williams stated that she and Nurse Leah Darlington arrived at the D Dormitory and were informed that the inmate was not responsive. Nurse Williams added that Nurse Carolyn Conrad told the officers that inmate Cox "looked dead." Nurse Williams stated that she and Nurse Darlington arrived at cell D2210. Nurse Williams indicated that it took approximately 3-4 minutes for the cell door to open. Nurse Williams entered cell D2210 and observed Cox on the ground on his back. Cox had handcuffs on his hands (behind his back) and restraints on his feet. Nurse Williams observed blood in Cox's mouth and nose, and a bruise on the left side of his forehead. Nurse Williams added that Cox's ears and "finger beds" were "blueish." Nurse Williams could not get a blood pressure reading or pulse and expressed that Cox was very warm to the touch. Nurse Williams stated that she immediately requested an AED and for someone to call 9-1-1. Nurses Williams and Darlington conducted CPR on Cox. Nurse Jenell Jones arrived with an AED and assisted with CPR. Nurse Williams stated that the AED instructions never advised to shock Cox, as there was never heart activity.

SA Jester inquired if there was anything around Cox's neck. Nurse Williams stated that there was a shirt underneath Cox's neck as if it had been untied. Nurse Williams stated that she observed bruises on Cox's neck. Nurse Williams stated that she observed blood on a pillow that matched blood coming from Cox's nose and mouth.

According to Nurse Williams, Nurse Conrad told her that she found Cox face down with a shirt tied around his neck. Inmate Hurley Brown was removed from the cell. Cox was handcuffed and then turned from his stomach to his back.

Nurse Williams indicated that in this incident, the first responder should have initiated CPR. If no vital signs were observed, CPR should have started then additional medical help summoned. Additionally, medical was not informed that the inmate was unresponsive, only that he had a seizure. Nurse Williams stated that nurses could not pronounce someone deceased and must continue CPR until exhausted or EMS arrived. According to Nurse Williams, the officers did not assist and stayed out of the way.

After the initial interview, Nurse Williams initiated contact with SA Jester and asked to provide additional information. SA Jester then conducted a subsequent interview. This interview was also sworn to and digitally recorded. Nurse Williams stated that when she and Nurse Darlington finally got cell D2210 open, she was under the impression that they were taking Cox to the Medical Unit. Officers informed Nurse Williams they could not take Cox because it was a crime scene. Furthermore, officers asked what they were going to do with Cox because he appeared to be dead. Nurse Williams stated that they had to do everything possible because no one there could pronounce Cox deceased. Nurse Williams questioned whether officers told Nurse Conrad the same thing, and that was why she did not attempt CPR. SA Jester inquired who told her this. Nurse Williams stated that it was mostly a captain as she observed him wearing a white shirt. Nurse Williams did not know the captains name.

SA Jester reviewed Incident Report (430-0315-113E) and determined that Rashena Williams authored the report. Nurse Williams reported that at approximately 1930 hours, on March 15, 2015, she was asked to respond to the D Dormitory because an inmate was having a seizure and that a stretcher was needed. Nurse Williams reported that as she was headed to the D Dormitory she came across an officer and asked what had happened. According to the report, the officer told Nurse Williams, "I think he's [Cox] dead." Nurse Williams arrived at the D Dormitory where Nurse Carolyn Conrad stated "...he [Cox] looks dead." Nurse Williams and Nurse Leah Darlington arrived to cell D2210 at approximately 1940 hours and observed Cox in restraints on his back. Cox was bleeding from his mouth and nose and had a bruise on the left side of his forehead. Nurse Williams reported that Cox's nail beds and ears were cyanotic. Nurse Williams indicated that she shook Cox in an attempt to get a response to no avail. Nurse Williams was unable to obtain a pulse or blood pressure on Cox. Nurse Williams and Nurse Darlington began CPR and requested someone bring an Automated External Defibrillator (AED). Nurse Jenell Jones arrived with an AED, the restraints were removed from Cox, and AED leads attached to Cox. According to the report, the AED advised not to shock and to continue CPR. The nurses continued CPR until EMS arrived at 2005 hours.

**Jenell Jones, LPN**                    **(IR-14, IR-32)**

On Friday, March 20, 2015, SA Jester interviewed Nurse Jenell Jones at MCI. During the sworn, digitally recorded interview, Nurse Jones indicated that she was certified as a Licensed Practicing Nurse (LPN). Nurse Jones added that she was currently employed by Wexford Health Sources Incorporated and had been for approximately 1.5 years.

Nurse Jones had been a nurse for approximately 31 years. Nurse Jones had previous correctional nursing employment including Broward Correctional Institution (BCI) and Broward County Jail.

SA Jester inquired if MCI had a response kit for medical emergencies. Nurse Jones stated that a stethoscope, blood pressure cuff, saline, diabetic supplies, etc. were in the kit. SA Jester inquired if the nurses could intubate. Nurse Jones replied that only the doctor could do that. SA Jester asked what the protocol was for a medical emergency such as that which occurred on March 15, 2015. SA Jester asked if a nurse handing out medications would typically continue that activity after initially having contact with an inmate emergency. Nurse Jones stated that a nurse should assess the inmate and then begin and continue CPR if necessary.

SA Jester asked Nurse Jones what her involvement was with the incident with inmate Cox. Nurse Jones stated that she was in the Medical Unit and noticed the charge nurse looking for the AED. The charge nurse stated that an inmate in the D Dormitory was unresponsive. Nurse Jones then took the AED to the D Dormitory and provided it to the nurses in cell D2210. Nurse Jones stated that Nurse Leah Darlington began to attach the AED to Cox and Nurse Jones assisted with CPR. Nurse Jones stated that the AED never advised to shock so the nurses continued CPR.

SA Jester asked what Cox looked like when she first observed him. Nurse Jones stated that Cox was on the floor on his back. Nurse Jones observed blood in Cox's mouth, he was cyanotic, and his ears and lips were blue. According to Nurse Jones, Cox was warm to the touch. Nurse Jones observed a "long cloth" behind Cox's neck.

SA Jester reviewed Incident Report (430-0315-113F) and determined that Jenell Jones authored the report. Nurse Jones reported that at approximately 1945 hours, on March 15, 2015, Nurse Romy Codada informed her that an Automated External Defibrillator (AED) was needed in the D Dormitory because an inmate was unresponsive. Nurse Jones reported that as she arrived to cell D2210 she observed Cox in restraints on the cell floor. Cox was unresponsive, bleeding from his mouth and nose, and was warm to the touch. Nurse Jones reported that Nurse Rashena Williams and Nurse Leah Darlington were performing CPR. At approximately 1955 hours, the AED pads were attached to Cox and the AED was turned on. Nurse Jones advised that the restraints were removed from Cox. According to Nurse Jones, the AED analyzed Cox's cardiac rhythm and no shock was advised. The nurses continued CPR until EMS arrived.

### Leah Darlington, LPN          (IR-18, IR-30)

On Tuesday, March 24, 2015, SA Jester interviewed Nurse Leah Darlington at MCI. During the sworn, digitally recorded interview, Nurse Darlington indicated that she was certified as a Licensed Practicing Nurse (LPN). Nurse Darlington added that she was currently employed by Wexford Health Sources Incorporated and had been for approximately one (1) year. Nurse Jones had been a nurse since 2006. Nurse Darlington had prior correctional nursing employment at Augusta State Medical Prison.

SA Jeter inquired if Nurse Darlington was working on March 15, 2015 and if she remembered an incident in the D Dormitory. Nurse Darlington stated that she did. Nurse Darlington stated that the nurses received a call out that an inmate had a seizure and needed a stretcher. As Nurse Darlington was going to the cell, more information came out that something else was wrong with Cox. Nurse Darlington arrived at cell D2210 to assess Cox. Nurse Darlington stated that some officers and a captain were at the cell and indicated that Cox was not moving. Nurse Jenell Jones was still in the Medical Unit and was asked to bring emergency equipment to include an Automated External Defibrillator (AED). Nurse Darlington stated that Cox had no pulse and was not responding so Nurse Darlington began emergency resuscitation with Nurse Rashena Williams. Nurse Darlington stated that they began giving chest compressions until a mouthpiece arrived and at which time they began giving rescue breathes. Nurse Darlington added that Nurse Conrad and a correctional officer (CO) were handing out medications when Nurse Darlington arrived to wing 2.

SA Jester asked what Cox looked like when she first observed him. Nurse Darlington stated that Cox was on the floor on his back. Nurse Darlington observed a cut with a lump on Cox's forehead, redness on Cox's neck, and a bite on Cox's tongue. Nurse Darlington observed blood in Cox's mouth and on a pillow. Nurse Darlington observed a T-shirt that was rolled and twisted underneath Cox's neck. Nurse Darlington stated that Cox was warm to the touch and was still warm when EMS arrived. SA Jester asked Nurse Darlington if she was able to get rescue breathes into Cox due to the blood in his mouth. Nurse Darlington stated that there was not enough blockage to stop air because she observed Cox's chest rise and fall with the rescue breathes. When Nurse Jones arrived, they attempted to utilize the AED but were unable to shock as there was no heart rhythm. Nurse Darlington added that when EMS arrived they attempted to utilize their AED that also did not indicate to shock.

Nurse Darlington added that officers told the nurses that the cell was a crime scene and did not want things in the cell touched. Nurse Darlington stated that nurses cannot pronounce death and moved some of the items in the cell so they could provide rescue breathe(s) and aid.

SA Jester inquired if Nurse Darlington was familiar with inmates who attempted or committed suicide. SA Jester added that he was specifically asking about the T-shirt being rolled up to make it stronger. Nurse Darlington stated that it was more common to use a sheet or blanket in that manner.

Nurse Darlington stated that because they were not told what the actual emergency was, they did not arrive prepared at the cell. Nurse Darlington speculated that if Cox was found earlier they could have done more.

SA Jester reviewed Incident Report (430-0315-113D) and determined that Leah Darlington authored the report. Nurse Darlington reported that at approximately 1930 hours, on March 15, 2015, she received a call from the D Dormitory in which the officer stated that an inmate was having a seizure, to bring a stretcher. Nurse Darlington reported that she arrived at the D Dormitory, cell 2210 and observed an inmate (later identified as Cox) lying on the floor, not moving, and appeared to be unresponsive.

Nurse Darlington and Nurse Rashena Williams entered the cell and observed that Cox was on his back, had his hands handcuffed behind his back, and had shackles on his legs. Nurse Darlington wrote that Cox's ears were cyanotic and fingernail beds discolored. Nurse Darlington noted blood in Cox's mouth and nose and a laceration on his left forehead area. Nurse Darlington also reported that she observed a laceration on Cox's tongue. Nurse Darlington indicated that she attempted to get a response by shaking Cox vigorously. Nurse Darlington and Nurse Williams checked for a carotid, radial, and apical pulse to no avail. Nurses Darlington and Williams began and continued CPR until Nurse Jenell Jones arrived with an Automated External Defibrillator (AED). The nurses then followed the directions the AED instructed. This continued until EMS arrived.

### Carolyn Conrad, LPN          (IR-27, IR-33)

On Thursday, April 9, 2015, SA Jester interviewed Nurse Carolyn Conrad at her residence located in Okeechobee, Florida. Also present during the interview was SA Kevin Kulp. During the sworn, digitally recorded interview, Nurse Conrad indicated that she was certified as a Licensed Practicing Nurse (LPN). Nurse Conrad added that she was currently unemployed, but at the time of the incident was employed by Medical Staffing Network. Nurse Conrad was employed for approximately one (1) month at MCI. Nurse Conrad had been a nurse since 1994, but only actively for approximately 12 years during that time span. Nurse Conrad had previous correctional nursing employment at Avon Park Correctional Institution and Moorehaven Correctional Institution.

SA Jester inquired if Nurse Conrad was working on March 15, 2015 and if she remembered an incident in the D Dormitory. Nurse Conrad stated that she did. Nurse Conrad stated that she was assigned to pass out medications to inmates in the D Dormitory. Nurse Conrad stated that she went to the D Dormitory and waited for security staff to escort inside the dormitory. Nurse Conrad could not remember the name of the correctional officer (CO) who was assigned to walk her around on March 15, 2015.

SA Jester asked Nurse Conrad if she remembered the environment prior to reaching inmate Cox's cell. Nurse Conrad stated that it was very noisy. She added that the inmates were yelling and banging on the cells. Nurse Conrad could not remember what the inmates were yelling. Nurse Conrad stated that she began to pass out medications; however, the CO assigned to walk her around forgot his radio and had to go to the control room to retrieve it. Nurse Conrad and the CO then reentered wing two. She began to pass out medications again, and then the CO asked her to go upstairs to cell D2210. Nurse Conrad observed Cox on the floor and the other inmate (Hurley Brown) standing or possibly sitting on his bunk. The CO called for assistance and another CO arrived. The CO handcuffed Brown and escorted him out of the cell. Nurse Conrad went inside the cell and saw Cox face down, with his head in a pillow and a white cloth around his neck. Cox's arms were straight down at his side. Nurse Conrad attempted to find vital signs on Cox to no avail. Nurse Conrad observed blood on the pillow that was under Cox's face. She also observed blood in Cox's nose and mouth and an abrasion on his head. Nurse Conrad performed a chest rub and several chest compressions but could not get a response. Nurse Conrad stated that Cox's torso was warm but that his hands, ears, and nose were discolored. Nurse Conrad stated that other medical staff was then

requested. SA Jester asked if Cox was ever handcuffed or shackled by a CO. Nurse Conrad stated that Cox was not. Nurse Conrad remembered the CO untie the cloth that was around Cox's neck. SA Jester asked Nurse Conrad if the CO's offered to or assisted her with tending to Cox. Nurse Conrad stated that they did not. Nurse Conrad was visibly upset during the interview and stated that it was the first time she had ever encountered that type of situation. SA Jester asked Nurse Conrad where she checked for a pulse on Cox. Nurse Conrad stated that she checked his wrist and neck. Nurse Conrad stated that she told the CO she thought Cox was dead. Nurse Conrad stated that she did attempt to revive Cox. After Nurse Conrad exited the cell, she later handed out the rest of the inmates' medications.

SA Jester asked Nurse Conrad if inmate Brown said anything to her or that she overheard him saying. Nurse Conrad stated she did not remember Brown saying anything. SA Jester asked Nurse Conrad if she wrote a report. Nurse Conrad stated that she wrote an incident report and turned it in. SA Kulp asked Nurse Conrad if she had any medical equipment with her. Nurse Conrad stated that she did not have a CPR mask, gloves, or any medical equipment. SA Kulp asked Nurse Conrad what type of training she received when she started working at MCI. Nurse Conrad stated that she did not have any training from Medical Staffing Network or MCI. Nurse Conrad said that she was only told to hand out medications. Nurse Conrad added that the full-time nurses who worked for Wexford Health Sources Incorporated received training.

SA Jester reviewed Incident Report (430-0315-113G) and determined that Carolyn Conrad authored the report. Nurse Conrad reported that while passing out medications in the D Dormitory, inmates declared "man down." Nurse Conrad noted an inmate in cell 210 was lying face down. She added that a cellmate [Hurley Brown] was standing in the cell and removed by officers. Nurse Conrad wrote that Cox was face down with his arms to his sides, a pillow under his face, and a white cloth around his neck that was tied in a knot. Nurse Conrad reported that Cox had no chest movement and she could not obtain a pulse on Cox. Cox was rolled over at which time Nurse Conrad noted blood in Cox's mouth and nose, an abrasion to the left forehead area, and Cox's nose and ears were discolored. Nurse Conrad reported that she rubbed Cox's chest vigorously and received no response. Nurse Conrad noted that Cox was warm and pale. According to Nurse Conrad's report, security notified the medical unit to respond with emergency equipment. Nurse Conrad reported that other nurses arrived with a stretcher, emergency bag, and Automated External Defibrillator (AED).

**Romy Codada, RN**                            **(IR-29)**

SA Jester reviewed Incident Report (430-0315-113C) and determined that Romy Codada, Registered Nurse (RN), authored the report. Nurse Codada reported that on March 15, 2015, she received a call from the D Dormitory in which the officer stated that an inmate was having a seizure, to bring a stethoscope. According to Nurse Codada, Nurse Leah Darlington was gathering the medical supplies for the emergency. An officer assigned to the medical unit also mentioned to bring a stretcher. Nurse Codada stated that Nurse Rashena Williams volunteered to assist Nurse Darlington. At approximately 1950 hours, Nurse Codada received a third call from the D Dormitory that indicated the inmate was unresponsive, had no vital signs or pulse, and that the nurses had begun CPR. Nurse

Codada state that Nurse Jenell Jones then took an Automated External Defibrillator (AED) to the D Dormitory. Nurse Jones returned to the medical unit and told Nurse Codada that the nurses were still unable to obtain any vital signs. Nurse Codada then went to the D Dormitory where EMS personnel were on scene.

| VIII.   Interview of Suspect Hurley Brown | (IR-03) |
|---|---|

*Serving 35 years for Robbery with a Gun or Deadly Weapon*

On Sunday, March 15, 2015, SA Jester interviewed inmate Hurley Brown (DC#402730) at   MCI. Also present during the interview were Nita Denton, Chief Attorney of the Martin County State Attorneys' Office (SAO), and Assistant State Attorney (ASA) Richard Bodek. Prior to the sworn, digitally recorded interview, SA Jester read Brown his Miranda Warnings. Brown stated that he understood his rights and wished to give SA Jester a statement. Brown stated that he arrived at MCI in approximately February 4, 2015 and was initially housed in the E Dormitory. Since approximately February 6, 2015, Brown has been housed in protective management (PM) in the D Dormitory, wing 2, cell 2210. Brown stated that he was initially housed with an inmate Richardson who was moved out of his cell on Friday, March 13, 2015. Shortly after, Cox was placed in Brown's cell. Brown stated that Cox was housed in D2214 prior to being moved.

SA Jester inquired if Brown had any prior trouble with Cox. Brown stated that he did not and added that he did not believe that either Brown or Cox should have been housed with anyone else [due to their PM status]. Brown stated that Cox came into the cell with an attitude towards the CO's. Brown stated that Cox was mad the entire time he was in the cell. Brown stated that on March 15, 2015, he went to sleep and was awakened by Cox attempting to hang himself. Brown stated that he was asleep on the lower bunk and felt his bunk "bumping." Brown stated that Cox was attempting to tie a sheet around the end of the upper bunk hitting Brown's bunk. Brown stated that Cox had a sheet or shirt tied around his neck and was attempting to tie the sheet that was around the bunk around the item on Cox's neck. Brown then told Cox he was not going to do that in the cell, and that if he wanted to, to do it in the shower or something. Cox became angry with Brown and said that Brown could not tell him what to do. Brown added that he told Cox he was not going to be sprayed [by chemical agent] because of Cox's attempt at suicide. Brown stated that he assumed the event was over and rolled over to sleep. According to Brown, Cox then jumped on Brown and began to hit Brown in the back of the head. Brown rolled over and began to fight back. Brown stated that he thought he broke his arm. Brown added that he was able to get Cox to the floor where he then punched and kicked Cox several times. Brown stated that he stomped Cox's head with his bare feet and Cox's head bounced off the concrete floor a few times. Brown described Cox as being on his stomach during this. Brown stated that he fought Cox until the fight was over because he did not know if Cox had a razor or ice pick, adding that every inmate had some sort of weapon at MCI. Brown stated that once Cox stopped responding Brown stopped fighting. Brown then noticed that Cox was making a "gagging" noise and was "having a seizure." Brown then yelled to the inmates housed in the cells next to Brown that Cox was having a seizure. Brown advised the inmates to bang on the doors to get the attention of CO's to get medical attention for Cox. Brown stated that he placed a pillow

underneath Cox's head so his head did not hit the floor or walls.  Brown stated that Cox's head was turned to the side.  Brown added that he was not trying to kill Cox.

Prior to the interview, SA Jester and Det. Weaver examined Brown for injuries.  SA Jester noted what appeared to be swelling to the left forearm area of Brown. Additionally, SA Jester observed some swelling and a minor abrasion to the upper knuckle of the middle finger on Brown's right hand.  The injuries were memorialized via photograph.

| IX. | Meeting with Crime Scene Detective | (IR-20) |
|---|---|---|

On Friday, March 27, 2015, SA Jester met with MCSO Det. Weaver.  During the meeting, Det. Weaver provided SA Jester a copy of his report (MCSO Case #15-03115). Additionally, Det. Weaver gave SA Jester a compact disc that contained crime scene photographs.  SA Jester reviewed Det. Weaver's report and read that Det. Weaver documented the crime scene with photography.  Additionally, Det. Weaver reported the condition of Cox's body as he observed it along with any injuries that he observed. Det. Weaver noted and collected a blood sample from the cell floor near Cox's head.

Det. Weaver reported that he next went to where inmate Hurley Brown was being detained.  Det. Weaver documented via photograph an injury to Brown's left forearm that Brown claimed was broken.  Det. Weaver also photographed Brown's back and hands.

Det. Weaver reported that he attended the autopsy of Cox on March 16, 2015.  Det. Weaver collected Cox's clothing from the Medical Examiner's Office.

Det. Weaver listed his items of evidence collected as follows:

| MW1 | Bed Sheet |
|---|---|
| MW2 | B.O.D.E. Collector |
| MW3 | T-shirt and socks |
| MW4 | Decedent's property |
| MW5 | Decedent's clothing from Medical Examiner's Office |

| X. | Review of D Dormitory, Wing 2 Videos | (IR-12, IR-36) |
|---|---|---|

SA Jester reviewed DVD's that contained video of the D Dormitory, wing 2, from 6:00PM to 8:00PM and 8:00PM to 8:30PM, respectively, for Sunday, March 15, 2015. (Times referenced will be approximate and from the timestamp on the video.)  The following outlines the times notable activity occurred from the front camera:

18:25:21    Correctional Officer (CO) observed starting to do cell checks.  CO takes time at cells on bottom left then pauses in the back of the wing and at a cell on the bottom right for approximately 45 seconds. CO finishes quick walk past the remainder of bottom right cells then a quick walk past the

|          | upper cells. CO does not look into every cell. Did not appear to look into cell D2210. Cell checks complete at 18:28:02 |
|----------|---|
| 18:35:00 | The last inmate in the wing not inside a cell finished cleaning and returned to his cell. |
| 19:24:52 | Sergeant (Sgt.) Robert Feipel and Nurse Carolyn Conrad enter the wing. Sgt. Feipel immediately proceeds upstairs and Nurse Conrad goes towards a cell on the bottom floor but then proceeds to follow Sgt. Feipel upstairs. |
| 19:25:05 | Sgt. Feipel looks into cell D2210 and then appeared to communicate with an inmate (later identified as Hurley Brown). Sgt. Feipel placed handcuffs on Brown through the door opening. |
| 19:27:37 | CO Christopher Rose entered wing 2 upstairs and proceeded to cell D2210. |
| 19:27:53 | CO Rose and Sgt. Feipel entered cell D2210. |
| 19:28:41 | Nurse Conrad entered cell D2210. |
| 19:29:27 | CO Rose removed inmate Brown from the cell and took Brown out of view of the video. |
| 19:30:24 | CO Rose re-entered cell D2210. |
| 19:34:24 | Other Department of Corrections (DOC) personnel arrived at cell D2210. |
| 19:35:15 | Nurse Conrad exited cell D2210. |
| 19:35:45 | Sgt. Feipel walked downstairs. |
| 19:36:37 | Nurse Conrad and a CO begin to hand out medications to inmates in wing 2. Cell D2210 was closed, no CO's at the cell. |
| 19:40:18 | Nurses Leah Darlington and Rashena Williams arrived at cell D2210. SA Jester observed no backboard or medical supplies. |
| 19:41:32 | Nurses Darlington and Williams entered cell D2210. Nurse Conrad was observed continuing to hand out medications. |
| 19:42:55 | CO Shedeldra Townsend arrived at cell D2210 with what appeared to be a medical kit. |
| 19:48:15 | Nurse Jones arrived to cell D2210 with an AED. |
| 19:49:22 | Nurse Conrad exited wing 2. |

20:15:56       EMS arrived to cell D2210 with a backboard.

20:23:55       EMS personnel begin to leave cell D2210.

20:25:04       Cell D2210 was closed and all personnel left the area.

20:26:06       A CO was stationed at cell D2210 with what appeared to be a log
               for documentation.

SA Jester reviewed a DVD and determined that it contained two (2) separate videos of
the D Dormitory, wing 2. One video was from 6:00PM to 8:00PM and the other video
was from 8:00PM to 8:30PM for Sunday, March 15, 2015. The videos were from a
camera located in the back of wing 2 that faced the control room of the D Dormitory. It
should be noted that cell D2210 is not visible on this video. (Times referenced will be
approximate and from the timestamp on the video.) The following outlines the times
notable activity occurred:

18:28:50       Last time a correctional officer (CO) was observed near cell D2210 until
               after the event.

18:36:00       Inmates exit wing 2 that had been cleaning up trash.

19:22:48        Sergeant (Sgt.) Robert Feipel and Nurse Carolyn Conrad enter the wing.
               Nurse Conrad begins to hand out medications.

19:23:46       Sgt. Feipel and Nurse Conrad exit wing 2

19:24:35       Sgt. Feipel and Nurse Conrad re-enter the wing. Sgt. Feipel immediately
               proceeds upstairs and Nurse Conrad goes towards a cell on the bottom
               floor but then proceeds to follow Sgt. Feipel upstairs.

19:25:05       Sgt. Feipel looks into cell D2210 and then appeared to communicate with
               an inmate (later identified as Hurley Brown). Sgt. Feipel placed handcuffs
               on Brown through the door opening.

19:27:20       CO Christopher Rose entered wing 2 upstairs and proceeded to wind
               D2210.

19:29:34       CO Rose walked inmate Hurley Brown from the cell and took Brown to a
               room upstairs and locked him inside.

19:30:22       CO Rose re-entered cell D2210.

19:33:55       Other Department of Corrections (DOC) personnel arrived at D2210.

19:35:15       Nurse Conrad exited cell D2210.

19:35:53       Sgt. Feipel walked downstairs.

| 19:38:52 | Nurse Conrad and a CO begin to hand out medications to inmates in wing 2. Cell D2210 was closed, no CO's at the cell. |
| 19:39:30 | Nurses Leah Darlington and Rashena Williams arrived at cell D2210. SA Jester observed no backboard or medical supplies. |
| 19:42:45 | CO Shedeldra Townsend arrived at cell D2210 with what appeared to be a medical kit. |
| 19:48:06 | Nurse Jones arrived to cell D2210 with an AED. |
| 20:15:20 | EMS arrived to cell D2210 with a backboard. |
| 20:23:55 | EMS personnel begin to leave cell D2210 |

---

**XI.    Autopsy and Medical Examiner Report**                    **(IR-06, IR-37)**

---

On Monday, March 16, 2015, SA Jester attended the autopsy of inmate Christopher Cox (DC#T43015). Also present during the autopsy was Crime Scene Detective Weaver of the MCSO. Det. Weaver memorialized the body of Cox and injuries of note via photographs. Dr. Linda Rush O'Neil of the District 19 Medical Examiner's Office conducted the autopsy. Dr. O'Neil noted that there was trauma to the head and neck of Cox. Additionally, Dr. O'Neil stated that there appeared to be a contusion on Cox's brain and a brachial cartilage tear. Dr. O'Neil noted a bite to Cox's tongue and gasses in Cox's lungs, which she stated was indicative or consistent with a seizure.

On Wednesday, May 20, 2015, SA Jester received the Medical Examiner's Report (ME Report) for Christopher Cox. SA Jester reviewed the ME Report, case number 15-19-193, authored by Linda Rush O'Neil, M.D. SA Jester observed that the cause of death was listed as blunt trauma injuries of the head and neck. The manner of death was homicide. Evidence of recent injury was noted as faint, red, petechial hemorrhages on the right periorbital regions and eyelids; subarachnoid hemorrhage of the inferior right frontal and right occipital brain; and a laryngeal anterior cartilage fracture; other abrasions and contusions were mentioned. The final anatomic diagnosis was:

I.     Blunt trauma injuries of head and neck
a.     Contusion of brain
b.     Subarachnoid hemorrhage of brain
c.     Cerebral edema, brain 1490 grams
d.     Multiple hemorrhages of musculature of neck, posterior and anterior
e.     Fracture of cartilage of larynx
f.     Contusion of tongue
II.    Hemorrhage of musculature of right back
III.   Pulmonary edema and congestion
IV.    Aspiration of gastric contents

## XII.    FDLE Summary Analysis

After a comprehensive investigation, Christopher Cox succumbed to injuries sustained during an altercation with Hurley Brown. Brown admitted to stomping Cox's neck and head. The Medical Examiner reported that the cause of Cox's death was a result of blunt trauma injuries of the head and neck. Brown stated that the altercation was a result of Brown defending himself against Cox, who was attempting to commit suicide and allegedly jumped Brown while Brown was in bed. Brown stated that he continued to fight Cox until Cox no longer posed a threat. Brown stated that he then attempted to get medical attention for Cox as Cox was "having a seizure."

## XII.   FDLE Summary Analysis

After a comprehensive investigation, Christopher Cox succumbed to injuries sustained during an altercation with Hurley Brown. Brown admitted to stomping Cox's neck and head. The Medical Examiner reported that the cause of Cox's death was a result of blunt trauma injuries of the head and neck. Brown stated that the altercation was a result of Brown defending himself against Cox, who was attempting to commit suicide and allegedly jumped Brown while Brown was in bed. Brown stated that he continued to fight Cox until Cox no longer posed a threat. Brown stated that he then attempted to get medical attention for Cox as Cox was "having a seizure."