UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-14177-CIV-ROSENBERG/MAYNARD

MONICA STONE, as the Personal Representative
of the Estate of Christopher Cox, and on
behalf of Survivors Monica Stone and Ronald Doyle,

    Plaintiff,

v.

ROBERT HENDRY,
ROBERT FEIPEL,
CHRISTOPHER ROSE,
DAVID BAILES, AND
CAROLYN CONRAD,

    Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR AN ORDER OF ENTITLEMENT TO ATTORNEYS FEES (DE 326)

**THIS CAUSE** comes before this Court upon an Order of Reference (DE 348) and the above Motion. Having reviewed the above Motion, Response (DE 344), and Reply (DE 346) and the relevant portions of the record, this Court recommends as follows:

## BACKGROUND

1.     On March 13, 2015, inmate Christopher Cox was moved into a cell with Hurley Brown. Cox had asked his jailers not to place him in Brown's cell fearing that Brown would attack him. Other inmates in the wing also were concerned about Cox's safety in Brown's cell. Indeed Brown, himself, already had expressed interest in hurting someone like Cox. The concern proved well-founded. Two days later Brown killed Cox. The medical evidence suggested death by strangulation and suffocation. Although a noose-like ligature was around Cox's neck (similar to what Brown's previous cellmate had used to attempt suicide), it was not the cause of the type

of physical injuries sustained. The attack occurred during a prolonged time gap when the cell went unmonitored, a gap which Brown may have been able to anticipate. The whole event occurred in apparent non-compliance with the policies for cell assignments and for cell monitoring that the Martin Correctional Institution ("MCI") had. Around 7:30 PM Cox was found in his cell unresponsive, and by 8:00 PM paramedics pronounced him dead. As this Court noted at ¶54 of the summary judgment ruling, the evidence shows no apparent disciplinary or criminal consequence suffered by Brown as a result of Cox's death. As Defendants Warden Hendry and Sgt. Feipel recall at footnote 3 of their cost motion (DE 324), Brown refused to testify about the incident at his deposition in this case.

      2.     Monica Stone---who is Cox's mother and the personal representative of his estate----sued the Florida Department of Corrections ("FDOC")[1], MCI's warden, various MCI Correctional Officers, and an MCI nurse for his death. The Plaintiff argued that Cox should not have been paired with Brown; that the Defendants were deliberately indifferent to the substantial risk of harm that Brown posed to Cox; that the risk of harm was borne out when Brown killed Cox; and that the Defendants were then deliberately indifferent to Cox's medical distress during and after the attack.

      3.     As for Defendants CO Rose and CO Bailes, specifically, they summarize at page 2 of their Motion the § 1983 claims that Plaintiff raised against them. The first claim, pleaded at Count I (Failure to Protect), was based on the allegation that they "were responsible for the classification and assignment of inmate Cox at MCI and were warned that inmate Brown would

---

[1] At DE 261 the District Court remanded the Plaintiff's negligence claim against FDOC back to state court. At page 7 of his Response (DE 344) the Plaintiff reports that the "state negligence case still survives and may prove more resilient" than the § 1983 deliberate indifference federal lawsuit.

injure or kill Cox". The second claim, pleaded at Count II (Failure to Render Aid), was based on the allegation that they "were in the D Dorm [where the cell was], that they in fact were aware of the alleged killing taking place, and deliberately failed to take any action for approximately thirty (30) minutes, thereby directly resulting in the alleged murder of Cox."

4. The Plaintiff sought to hold all of the above named Defendants liable under 42 U.S.C. § 1983 for the claimed constitutional violations that allegedly contributed to Cox's death. Ultimately the Defendants prevailed. After prevailing at the summary judgment stage (DE 319), Final Judgment was entered in their favor (DE 322). The Plaintiff appealed but lost. See Stone v. Hendry, 785 Fed.Appx. 763 (11th Cir. 2019). Two of the named Defendants, CO Rose and CO Bailes, now seek to recover their attorney fees, in the amount of $50,864.00.

## THE CHRISTIANSBURG STANDARD FOR SHIFTING ATTORNEY FEES

5. Defendants CO Rose and CO Bailes seek to shift their attorney fees to the Plaintiff pursuant to 42 U.S.C. § 1988. Subsection (b) of that statute permits "the court, in its discretion, [to] allow the prevailing party . . . a reasonable attorney's fee". However, when the prevailing party is the defendant, case law imposes a qualifier. In that situation the court may award the defendant attorney fees only if the plaintiff's § 1983 lawsuit was "frivolous, unreasonable, or without foundation". See Sullivan v. Sch. Bd. of Pinellas County, 773 F.2d 1182, 1188 (11th Cir. 1985) (citing the seminal case of Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412 (1978)). The purpose of the Christiansburg standard is to prevent the fee-shifting statute of § 1988 from discouraging plaintiffs against bringing all but "airtight" § 1983 claims.

6. From the Patsalides v. City of Fort Pierce, 2017 WL 10402990 (S.D.Fla. 2017) decision and the case law cited therein, this Court draws the below guidelines for how to apply the Christiansburg standard and for how to determine whether a case is "frivolous, unreasonable,

or without foundation". For ease of reference, this Court will condense that standard down and refer to just frivolousness.

## Frivolousness

7.      Regarding the <u>degree</u> of frivolousness, the <u>Christiansburg</u> standard sets a high bar. It requires a high degree of frivolousness, one that falls just short of subjective bad faith. It is not enough that the Plaintiff lost on the merits. Indeed the case law cautions courts not to measure frivolousness with the benefit of hindsight on a post-hoc basis nor to assume that a case is frivolous merely because the plaintiff lost. Accommodation must be made for the unpredictable course of litigation, and the record should be construed in the light most favorable to the non-prevailing plaintiff. The <u>Christiansburg</u> standard is met if the plaintiff wholly failed to substantiate her claims or persisted in a legal argument after learning of on-point and binding precedent that was clearly to the contrary. It is an objective inquiry. The plaintiff's subjective intent---that is, whether the plaintiff subjectively perceived her lawsuit to be frivolous---is irrelevant.

8.      With those guidelines in mind, this Court considers the Plaintiff's claims against Defendants CO Rose and Bailes. They argue that her claims against them were baseless. There was no evidence that linked them to the cell re-assignment decision that preceded the attack. Defendants CO Rose and CO Bailes deny any personal involvement in or personal knowledge about what happened to Cox. From their perspective, the Plaintiff's claims against them may have seemed frivolous and the effort to defend themselves unwarranted. That lack of inculpatory evidence is why they prevailed, but it does not mean that the Plaintiff's claims against them were baseless or frivolous.

9.      To explain why, this Court reviews the history of the litigation and how the Plaintiff's claims developed. A thorough discussion of what happened and of the Plaintiff's claims for relief is found in the summary judgment ruling of Stone v. Hendry, 2018 WL 9814650 (S.D.Fla. 2018). The essential facts of what happened, which this Court summarizes above at ¶1, were undisputed. The Plaintiff also had the benefit of a thorough internal report. Taken altogether, "[t]he Plaintiff's allegation that deliberate indifference may have caused the death of her son", this Court concluded at ¶93 of the summary judgment ruling, "[was] reasonably made". In other words the Plaintiff had a reasonable basis for bringing her § 1983 lawsuit and for naming the Defendants that she did including Defendants CO Rose and Bailes.

10.      Another factor that affected the lawsuit's development was the need for expertise. Initially the Plaintiff was represented by a general practice attorney who was not specialized in this kind of case. At page 3 of her Response (DE 344), the Plaintiff describes how initially at the pleadings stage, her first attorney was unfamiliar with "how corrections housing decisions were made". On January 23, 2018 current counsel of record took over the Plaintiff's representation (DE 84). At that time the Plaintiff's new counsel sought leave to amend her complaint to make substantive changes (DE 85). One such change, the Plaintiff explains at page 6 of his Response (DE 344), was "to make clear that the cell assignment was not attributed to Defendants Rose or Bailes." Leave to amend was denied which left the Plaintiff's preceding theory behind Count I in place. Even still, Count I did not assert the kind of dramatic conspiracy like Defendants CO Rose and Bailes now characterize it. Rather the Plaintiff argued that they, along with other prison staff, failed "to act reasonably to abate known risks of harm to vulnerable prisoners like Christopher Cox", as she recounts at page 7 of her Response (DE 344). However her new counsel simply

"arrived at the scene too late to save the constitutional case", the Plaintiff continues, too late to do what was needed "to meet the demanding standard of deliberate indifference."

11.     Not only did the Plaintiff have a reasonable predicate for bringing her § 1983 lawsuit, but she also had a reasonable need for discovery to develop her theories of relief. The Plaintiff was totally dependent on MCI and the Defendants for information about what happened to her deceased son. As Defendants CO Rose and Bailes emphasize in their Motion, they all denied any involvement in the cell re-assignment, and no evidence came to light to contradict their denial. However it cannot be said that the Plaintiff frivolously continued to press the claim despite a lack of evidence. For one, the Plaintiff was entitled to pursue discovery to confirm their denial. Second, the Plaintiff conceded the lack of inculpatory evidence in a forthright and open manner. At page 2 of her Response to their Motion to Exclude Testimony of Experts (DE 186), the Plaintiff stipulated that she "has no evidence that Officers Rose or Bailes were responsible for the classification of Christopher Cox". At page 14 of her Revised Omnibus Response to the Defendants' Motions for Final Summary Judgment (DE 281), the Plaintiff highlighted how MCI has no record of Cox's re-assignment to Brown's cell or who made that decision.

12.     Not only was there no evidence of their involvement in the cell re-assignment, but discovery did not yield any explanation for it at all or reveal who did make that decision. As this Court observed at footnote 13 of the summary judgment ruling, there was very little evidence about why Cox was moved into Brown's cell or who made that decision. Nor was there an explanation for why MCI's policies were not followed or why Cox's cell re-assignment was not documented. The only source of that information were the Defendants, themselves, (and especially the warden). Indeed it was that very lack of explanatory evidence and policy non-compliance that in a way actually lent some support to the Plaintiff's position.

13. The Plaintiff's § 1983 claim at Count II concerned the response of the various guards and nurses to the situation and whether they undertook resuscitative measures quickly enough. The fact record is more developed about the post-attack response phase than it is about the cell re-assignment phase. At some point around 7:15 PM neighboring inmates began trying to alert the guards to Cox's situation. That effort included one inmate yelling to a guard who was checking the perimeter of the neighboring dormitory wing. That inmate thought the guard was Defendant CO Bailes (although the record suggested that that guard more likely was CO Huertas-Rodriguez). Defendant CO Rose was assigned to the dorm where Cox had been housed with Brown, and his shift was starting at 7:00 PM contemporaneous with the attack. Video footage showed that the guard who had conducted the cell check before the start of CO Rose's shift had done it cursorily, walking quickly past Cox's cell without looking inside it. No cell check was done at 7:00 PM which would have been the next regular check. Defendant CO Rose explained that when he was checking in for his shift, he could hear inside the dorm wing through an intercom system. The Plaintiff argued that CO Rose therefore at least should have heard the commotion that the inmates were making in their effort to attract the guards' attention and thus should have investigated. Instead it was not until Sgt. Feipel and Nurse Conrad entered into the wing to do their regular rounds when Cox was found. Sgt. Feipel called Defendant CO Rose for assistance. When Defendant CO Rose arrived, he did not administer first aid (since Nurse Conrad had not undertaken it beforehand). The Plaintiff stresses how there was at least some evidence to tie Defendants CO Rose and Bailes to Count II (in contrast to Count I).

14. The Plaintiff did not survive summary judgment on the available record. That does not mean that her § 1983 claims against Defendants CO Rose and Bailes (or the other named Defendants for that matter) were baseless or that she pursued them in a frivolous manner.

Initially there was a factual predicate to believe that CO Rose and Bailes may have played a role at this stage. Later, as the Plaintiff explains at page 3 of her Response (DE 344), her new counsel had developed "a firm idea of what she would seek to prove at trial and the evidentiary basis for Rose and Bailes' liability." The Plaintiff was dependent on pre-trial discovery to develop her claims given that she, herself, had no other source of information about what happened to her son. She could not have foreseen that discovery would yield exculpatory evidence for Defendants CO Rose and CO Bailes. Indeed this Court recalls that generally speaking the Defendants overall had not been forthcoming with discovery, as this Court noted at ¶¶3-5 of the summary judgment ruling, even if Defendants Rose and Bailes, themselves, had honored fully their discovery obligations as they stress in their Reply (DE 341). Consequently the summary judgment ruling was limited to the evidence that was available.

15. The nature of the litigation is an informative point, too. The litigation activity was not of the kind that would suggest an inherently frivolous case. Discovery was highly contentions as the many discovery rulings that preceded the summary judgment ruling show. The depth of the summary judgment ruling, itself, both in terms of its record review and legal analysis, was more than what a truly frivolous lawsuit would require. The same could be said of the Eleventh Circuit's appeal opinion.

### The Sullivan Factors

16. Nor do the three Sullivan factors, to the extent they help guide and inform the Christiansburg analysis, support a finding of frivolousness. Those three factors are: (1) whether the plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1177—78 (11th Cir. 2005). These criteria are

meant as a general rule of thumb, a guideline that is not to be imposed rigidly. The question of whether a movant is entitled to a Christiansburg fee award instead is based ultimately on the particular facts and circumstances of the case. See Lawver v. Hillcrest Hospice, Inc., 300 Fed.Appx. 768, 773-74 (11th Cir. 2008).

17. The first factor looks at whether the Plaintiff established a prima facie case. No ruling was made that found on the merits that the Plaintiff failed to plead a prima facie cause of action against Defendants CO Rose and CO Bailes. Instead the case progressed to the summary judgment stage for consideration of the evidence. It is true that ultimately there was no evidence that showed either of them to have played a role in Cox's cell re-assignment or that suggested an insufficient response by them to Cox's situation during and after his attack. Indeed that is why they prevailed at the summary judgment stage, but it took until the summary judgment stage to reach a conclusive ruling. Given the overall complicated nature of the case, the need for discovery, and the need for a careful review of the record, this Court does not find the first Sullivan factor to weigh in the Defendants' favor.

18. The second Sullivan factor asks whether the Defendants offered to settle the case. The parties mediated this case on March 2, 2018 but reached an impasse (DE 134). The Defendants state in their Motion that at that mediation they "never offered the Plaintiff any money for a settlement." The Defendants therefore argue that the second Sullivan factor weighs in their favor. The Plaintiff disputes the accuracy of that assertion. The Plaintiff also contends that by making it, the Defendants lift the veil of confidentiality that Local Rule 16.2(g)(2) creates, and at DE 347 the Plaintiff asks for an evidentiary hearing on the matter should this Court feel inclined to credit this factor in the Defendants' favor. Because this Court does not credit this factor in the Defendants' favor, the dispute over the accuracy of the assertion is moot.

(Nor is there need for this Court to decide whether the Defendants' refusal to make a monetary settlement offer is consistent with good faith mediation.) Presumably the Defendants were confident in their knowledge that they played no direct role and therefore had no reason to fear liability. However, when this factor is considered in light of the overall circumstances of this case as discussed above, the Defendants' confidence at mediation does not necessarily imply that the Plaintiff's claims were frivolous.

19.     The third Sullivan factor asks whether the case was dismissed before trial. That is what happened here. However it did proceed to the merits-determination stage where a thorough legal analysis was undertaken. It also was appealed. The third factor therefore does not weigh in the Defendants' favor either.

20.     To the extent the above three Sullivan factors can be construed to weigh in the Defendants' favor, it still does not follow that their attorney fee motion should be granted. The lawsuit was overall reasonably brought and pursued for the reasons this Court explains above.

## CONCLUSION

21.     The merits of the Plaintiff's lawsuit is not at issue here. What is at issue is whether the Plaintiff's lawsuit is frivolous. For that analysis, this Court construes the record in a light favorable to the Plaintiff. The Defendants ultimately prevailed and certainly after much litigation effort on their part despite their personal knowledge that they had played no role. Their interest in shifting their attorney fees to the Plaintiff is understandable, but the law permits such relief only if the claims against them were frivolous. This Court does not find this case to meet Christiansburg's high bar. The record shows that the Plaintiff at least brought her claims against them with a reasonable basis. Over the course of the litigation, the Plaintiff obtained new counsel with greater familiarity with this subject matter and sought to learn exactly what happened

despite highly contentious discovery. In her Response in opposition to the Defendants' fee motion, the Plaintiff offers a vigorous and persuasive defense of her lawsuit. For all of the above reasons, this Court finds that the Defendants do not meet the Christiansburg standard for shifting their attorney fees to the Plaintiff to pay.

**ACCORDINGLY**, this Court recommends to the District Court that Defendants' Motion for an Order of Entitlement to Attorney's Fees (DE 326) be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case. Failure to file timely objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 749—50 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988). Conversely if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this __26th__ day of May, 2020.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　SHANIEK M. MAYNARD
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE